BAILEY v. WASHINGTON THEATRE COMPANY ET AL.

[No. 16,548. Filed May 26, 1942. Rehearing denied October 21, 1942. Transfer denied November 30, 1942.]

338

*O. Warren Harvey,* of Gary, *Cecil A. McCoy,* of East Chicago, and *Robert Lee Brokenburr,* of Indianapolis, for appellant.

*Condo & Caine,* of Marion, for appellee.

BEDWELL, J.—The appellant, Flossie K. Bailey, filed an action in the court below against the appellees to recover the penalty provided for under the provisions of § 2 of ch. 47 of the Acts of 1885 (§ 10-902 Burns' 1933), for the violation of what is usually denominated the "Civil Rights Statute" of this State. There was a trial by jury which returned a verdict for appellees.

The appellant, on appeal, is relying upon alleged error of the trial court in overruling her motion for a new trial, in striking out paragraphs two and four of her complaint, and in overruling her motion to approve and sign her bill of exceptions No. 2.

The amended first paragraph of appellant's complaint, upon which the cause was tried, alleged, in substance, the following facts:

That on March 20, 1935, the appellee, Washington Theatre Company, owned and operated within the city of Marion, Grant County, Indiana, a theatre known as "Indiana Theatre" which was a place of amusement for the general public; that the appellee Conners was employed by such corporation as manager of such theatre; that the appellee Jackson was employed as an usher, and the appellee Barley as a ticket seller; that on such date the admission charged the general public for tickets to the first floor of such theatre was thirty-five cents (35¢) per person.

That on the 20th day of March, 1935, the appellant was a person within the jurisdiction of the State of Indiana, and was a citizen of the State of Indiana who resided therein, and as such was entitled to the full and equal enjoyments, accommodations, advantages, facilities, and privileges of all theatres situate in the the State of Indiana, and subject only to the conditions and limitations established by law and applicable alike to all citizens. That on such date she accompanied her husband to such theatre and that her husband had purchased for her a ticket for the consideration of thirty-five cents (35¢); that she presented such ticket to the appellee Jackson, who was at that time on the door of the main entrance to the first floor of the theatre, and that Jackson refused her and her husband admission and refused them seats, and refused to honor the ticket which was purchased for said show of said performance and date. That she applied to appellee Conners for admission to said theatre and was by him likewise refused and was directed to the ticket office; that she called at the window for a ticket to the first

floor and was refused same by the appellee Barley; that she again called for the appellee Conners and he refused her admission to said first floor of said theatre and tickets thereto.

The amended first paragraph of complaint further alleged that appellant at said time desired to witness and enjoy a picture then showing at the theatre; that she tendered the price of the ticket, or caused the same to be tendered; that she was sober, orderly, courteous, well behaved, well dressed, free from all contagious and infectious diseases, and was ready, willing and able to comply with all lawful and reasonable rules of the theatre, but that she was denied admission solely because of the fact that she was of African descent, commonly called a colored person, or Negro.

The amended first paragraph of complaint further alleged that while appellant was at the theatre, white persons were coming and going without molestation and were sold tickets and admitted without questioning and without being stopped, and that the appellees were each conniving and conspiring to deprive the appellant of the equal privileges, accommodations, and enjoyments of the theatre solely because of her color and racial identity, to her damage in the sum of $100.

There was an answer of general denial to the amended first paragraph of complaint.

At the trial the evidence showed that the appellee Rowena White Barley, was not employed as a ticket seller at the theatre on the date in question, but on such date another employee, who was not made a party, acted as ticket seller. The only other conflict in the evidence was as to whether appellant was denied admission and as to whether appellees refused to sell her a ticket to the ground floor of the theatre because she was a member of the colored race.

On the occasion in question the husband of appellant during the afternoon of May 20, 1935, sent a white man to buy six tickets for admission to the ground floor of the theatre in question. These were purchased before the close of the afternoon showing of a picture, for the evening show. About six o'clock in the evening of such date the appellant, her husband and four other colored persons, appeared at the lobby and started to enter at the ground floor entrance when they were stopped by the usher. The husband of appellant testified that the usher informed them that his instructions were not to seat colored people on the first floor. The manager then came and the evidence, at this point, is in conflict, the witnesses of appellant testifying that he told them that the tickets were for white people; that they were sold for white people, and that the ground floor was for white people; and that he refused to permit them to enter the ground floor or to purchase tickets for the ground floor. They further testified that the doors were open when they attempted to gain admission on tickets that had been bought by the white man in the afternoon for them, and that there were vacant seats then and later when they attempted to purchase tickets to the ground floor; but that the manager would not permit them to buy tickets for the ground floor or permit them to use the tickets that had been purchased by the white person who acted as agent of the husband of appellant.

The appellee Conners testified that he would not permit them to use the tickets because they didn't buy them and because he had sold them with the express understanding that they were to be used by the gentleman that bought them, and that he would not allow the doorman to honor them unless the gentleman that bought them came personally with his own party. He further

testified that Dr. Bailey, the husband of appellant, asked for his money back and that he told him that he didn't have any money coming to him because he didn't buy the tickets. He further testified that during the same evening after appellant and the persons accompanying her were denied admission upon the tickets they then held, they all returned in a short time to the theatre and the appellant attempted to purchase a ticket to the ground floor and that then the following conversation took place: "Mrs. Bailey asked me, 'Why, Mr. Conners, why won't you sell me a ticket to the theatre?' She said, 'Is it because I am colored?' I said, 'No, Mrs. Bailey, it is not because you are colored, I sell lots of tickets to colored people, I just don't like you, and just don't want you in my theatre.' "

The following questions asked and answered by the appellee Conners appear in the record:

Q. "And you instructed your ticket sellers, including the last one who testified here just before noon, not to sell tickets to colored people for certain sections of that theatre, didn't you?"
A. "Oh, in a way, yes."

Q. "Isn't it a fact you further said, 'Doctor, these floors down here, on this floor, is reserved for white people only and you can't sit on this floor?' "
A. "I'm not silly."

A careful examination of the record discloses that the only reason given by the appellee Conners for refusal to honor the admission tickets presented by appellant, her husband and the four colored persons accompanying them, was the fact that the tickets had been purchased in the afternoon by a white person and that he was not present, and that the manager of appellee corporation did not know whether appellant and the individuals that accompanied her had authority or the

right to use such tickets. The only reason given by manager for appellee corporation for his refusal to permit appellant to purchase a thirty-five cent (35¢) ticket to the ground floor of the theatre was his statement that he did not like her. He gave no reason for refusing to permit the purchase of tickets by the other colored people that accompanied her. No facts, conditions or circumstances, other than her race, for any dislike of appellant by manager for appellee corporation is shown.

One of the grounds in appellant's motion for a new trial is that the verdict of the jury is not sustained by sufficient evidence.

Time and again has this court, and the Supreme Court, laid down the rule that the credibility of witnesses and the weight to be given to their testimony is for the jury; and that it is not the province of this court, on appeal, to weigh evidence for the purpose of determining where the preponderance lies. But despite the well established rule, this court is not always required to sustain the verdict of the jury where there is seeming conflict in the evidence.

Where there is legal evidence tending to support the finding of the jury, upon all material questions in issue, this court will not weigh the evidence or reverse the judgment on the weight of the testimony, unless it is of such a character that to believe it would involve an absurd or unreasonable conclusion. *Inland Steel Co.* v. *Harris* (1911), 49 Ind. App. 157, 162, 95 N. E. 271; *Bower* v. *Bowen* (1894), 139 Ind. 31, 36, 38 N. E. 326; *Isler* v. *Bland* (1889), 117 Ind. 457, 458, 20 N. E. 303.

In the case of *Isler* v. *Bland, supra,* Judge Mitchell of the Supreme Court states the rule as follows:

"Where competent evidence appears in the record which, if true, tends to sustain the verdict and judgment, unless it is of such a character as that to believe it would involve an absurd or unreasonable conclusion, no matter how much the evidence is contradicted it will support the verdict nevertheless."

The evidence introduced by appellees in defense to appellant's contention that she was denied admission to the ground floor of the theatre because of her race, was of such a character that to believe it would involve an absurd and unreasonable conclusion, and we hold that the verdict of the jury is not sustained by sufficient evidence. It is apparent that in all cases where a colored person is denied the rights and privileges guaranteed him or her by the Civil Rights Statute, that a defendant could deny that the exclusion was because of race or color and could place the reason therefor as dislike. When such a defense is asserted, and no basis for dislike is shown, this court, upon appeal, is not bound by the seeming conflict. Equally without reasonable support was the defense of appellee corporation and its manager that they would not honor tickets presented by appellant and the other five members of her race because they were purchased by a white man and that he was not with the party. There was no condition or circumstance to show that this contention was made in good faith.

The appellant is also objecting to the giving by the trial court of certain instructions tendered by the appellees, among which was Instruction No. 5, which read as follows:

"The court further instructs you that, under the statute involved in this case, it applies only to the owners and operators of theatres, and, if employees violate the Civil Rights Statutes herein referred to, the liability, if any, is that of the em-

ployer only and not of the employees; and, if you find from a preponderance of the evidence in this case that the defendants, Rowena White, Jimmie Jackson and Billie Conners, or either of them, were merely employees of the defendant, Washington Theatre Company, then and in that event, your verdict should be for such of the defendants as you find were employees at the time."

The statute upon which the action was based provides that:

"All persons within the jurisdiction of said state shall be entitled to the full and equal enjoyments of the accommodations, advantages, facilities and privileges of . . . theaters and all other places of public accommodations and amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens." § 10-901, Burns' 1933.

"Any person who shall violate any of the provisions of the foregoing section by denying to any citizen, except for reasons applicable alike to all citizens of every race and color, and regardless of color or race, the full enjoyment of any accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall, for every such offense, forfeit and pay a sum not to exceed one hundred dollars [$100] to [any] person aggrieved thereby, . . ." § 10-902, Burns' 1933.

In the case of *Fruchey* v. *Eagleson, by Next Friend* (1895), 15 Ind. App. 88, 103, 43 N. E. 146, which was an action under this particular statute based on the denial of the accommodations and facilities of an inn to a person of the colored race, an objection was made that since the statute was penal a violation could not occur through an agent, such as a manager or clerk of a hotel acting for the proprietor or owner. This court held that the rule contended for was applicable to criminal cases only and could not be invoked in civil actions

although such action was based upon a penal statute. In the course of its opinion the court says:

"The rule in such cases is the same as in other cases where the relation of master and servant subsists. The master is responsible for the acts of his servant in the course of the master's business."

It is well established in our law that when an injury results from the carelessness or negligence of a servant, while in the performance of the master's business, to a third person, the master and servant are both liable, and may be joined in an action to recover damages for the injury. *Wright* v. *Compton* (1876), 53 Ind. 337; *Childress v. Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 105 N. E. 467; *Illinois, etc., R. Co.* v. *Hawkins, Admx.* (1917), 66 Ind. App. 312, 115 N. E. 613.

The Civil Rights Statute, quoted above, makes liable not only the person who denies the privileges provided for, but also any person who aids or incites such denial. There is nothing in the language of the statute that would justify the conclusion that the liability of the master, which here was the theatre company, excluded the liability of the servants. All the persons who participated in the commission of an act for which only one penalty can be recovered may be joined as defendants in the action therefor; and two persons may be sued jointly for the penalty for violation of a law where they both participated in the same violation at the same time. 23 Am. Jur., Forfeitures and Penalties, § 63, p. 654.

We hold that the giving of Instruction No. 5 was error.

For the reasons heretofore given, the judgment is

reversed with directions to the court below to sustain appellant's motion for a new trial.

NOTE.—Reported in 41 N. E. (2d) 819.