ROSE HOBSON et al., Plaintiffs, *v.* YORK STUDIOS, INC., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, October 18, 1955.

*Bruce McM. Wright* and *Marion O. Jones* for plaintiffs.
*Isaac Knox* for defendant.

WAHL, J. The plaintiffs, Raymond S. Hobson, a Negro, and his wife, a white woman, sue for statutory redress under section 41 of the Civil Rights Law. They allege that when they applied for a room at the defendant's hotel, they were rejected by reason of their race and the sought public accommodations refused to them on that ground alone.

Section 40 of the Civil Rights Law, speaking of " public accommodations ", insofar as applicable here, reads as follows: " No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, * * * on account of race, creed, or color or national origin ".

The answer of the defendant is, in substance, a general denial and it disclaims any violation of the plaintiffs' civil rights.

The plaintiffs' testimony shows that on May 6, 1953, Mrs. Hobson, a white person, saw a sign on the defendant's hotel stating that a vacancy existed. She went in to seek lodging for herself and her husband. She was alone at the time. The desk clerk, a Mrs. Raleigh, showed Mrs. Hobson room 62-F, accepted a deposit of $5 and gave Mrs. Hobson a receipt, while reserving the room for both plaintiffs.

The next day, both plaintiffs returned to the defendant's hotel to claim their reservation and pay the balance due. Only Mr. Hobson spoke to the desk clerk, showing the receipt for the reservation. The desk clerk looked at the Hobsons and demanded proof of identification and of the marriage. At that point, an elevator man spoke to the desk clerk, who called him aside, where they had a whispered conversation, after which the desk clerk told Mr. Hobson that the hotel did not want " white and colored " living together in view of the tendency of another interracial couple, who had resided there previously, to fight all the time. Mr. Hobson stated to the clerk that they were married, gainfully employed, and frequently at night, she as a nurse, and he as a postal clerk. The desk clerk then returned the plaintiffs' deposit.

The testimony offered by the defendant through Mrs. Raleigh, the desk clerk, did not dispute that Rose Hobson, a white woman, made the reservation for the room, left a deposit and stated that she would return the next day with her husband for the room. Mrs. Raleigh's testimony differs from that of the plaintiffs as to the reason why the room was refused. She says

that the Negro plaintiff returned to the hotel alone with the receipt which had been given his wife. She states that when she demanded identification and proof of marriage, Mr. Hobson became abusive and offensive.

I have accepted the testimony of the plaintiffs, seemingly, respectable and worthy citizens, and I am convinced that both of them were discriminated against because of their race. The *post litem* contention that Mr. Hobson was offensive and abusive and that that was the basis of the refusal to give the plaintiffs accommodations is not convincing, nor was it pleaded as a matter of affirmative defense. It is natural that a defendant accused of racial discrimination will seek avoidance of statutory penalties therefor through " explanations ".

As the Appellate Court of Indiana noted in *Bailey* v. *Washington Theatre Co.* (112 Ind. App. 336, 344), while construing a statute in many respects similar to New York's: " It is apparent that in all cases where a colored person is denied the rights and privileges guaranteed him * * * (the) defendant could deny that the exclusion was because of race or color and could place the reason therefor as dislike. When such a defense is asserted, and no basis for dislike is shown, this court, upon appeal, is not bound by the seeming conflict."

Judge FULD, writing for the Court of Appeals (*Matter of Holland* v. *Edwards,* 307 N. Y. 38, 45), observed that: " One intent on violating the Law Against Discrimination cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discriminatory practices in ways that are devious, by methods subtle and elusive — for we deal with an area in which ' subleties of conduct * * * play no small part '." (Citing case.) (See, also, *Matter of Castle Hill Beach Club* v. *Arbury,* 208 Misc. 35, 42, 43.)

There is nothing in the record to lend even slight credence to the defendant's explanation for refusing to deal with the plaintiffs, and I have rejected the testimony on this point as unworthy of belief.

Since no corporate officer of the defendant testified, it does not appear that the defendant gave any instructions to its desk clerk not to discriminate racially. If nothing was said to employees about refusing admission to persons of the colored race, then the acts of the desk clerk are chargeable to the corporation. (*Norman* v. *City Island Beach Co.,* 126 Misc. 335.) Once the accusation is made of a racial rejection by a place of public accommodation, a corporate defendant is bound to come

forward with proof that the discrimination which is offensive to the statute has been forbidden by specific instructions to corporate employees. (*Jackson* v. *Imburgia*, 184 Misc. 1063; *Hubert* v. *Jose*, 148 App. Div. 718, 720, 721.) On this point the defendant elected to remain mute.

I now come to an aspect of this case which is not free of difficulty: If the white plaintiff, Rose Hobson, was discriminated against because of her race, may she be given relief under the Civil Rights Law? In the search for an answer to this question, it is idle to urge a strict and inflexible construction of the law simply because it is penal in nature. A liberal intent conceived the statute. The proper office of civil rights legislation is to search out hostility to our public policy and apply the proper remedy. Certain it is that: " Section 40 of the Civil Rights Law prohibits discrimination against *any person* by reason of race, color or religion. It is a remedial statute and must be liberally construed." (Emphasis mine.) (*Camp-of-the-Pines* v. *New York Times Co.*, 184 Misc. 389, 397.)

The principal case cited in support of strict construction of section 40 is *Cohn* v. *Goldgraben* (103 Misc. 500). It is also often cited for the proposition that the refusal by a place of public accommodation to serve a " mixed couple," i.e., Negro and white, does not offend the statute. It should be noticed that *Cohn* v. *Goldgraben* (*supra*) where only the white member of the " mixed couple " sued, represents a now antiquated view of the law and that, further, the decision appears to have turned upon a refusal by a restaurant to serve a Negro and a white man at the same table. There, the question was one of services, not one of public accommodations, such as a lodging. Hotels and inns have long enjoyed a special status in the law and restaurants have never been subjected to the liability of innkeepers. (*People* v. *Jones*, 54 Barb. 311; *Odom* v. *East Ave. Corp.*, 178 Misc. 363, affd. 264 App. Div. 985.)

Since 1918, when *Cohn* v. *Goldgraben* (*supra*) was decided, with a strong and enlightened dissent by BIJUR, J., the Legislature has steadily broadened the scope of its civil rights enactments. In 1945, the State Commission Against Discrimination was created (Executive Law, art. 15). In 1952, the article was amended to embrace " places of public accommodation " and discriminations other than those in employment (L. 1952, chs. 284, 285).

As in section 40 of the Civil Rights Law, the key words in section 296 of the Executive Law, as amended, are that: " It shall be an unlawful discriminatory practice for any person,

being the * * * agent or employee of any place of public accommodation * * * because of race, creed, color or national origin of any person, *directly or indirectly,* to refuse, withhold from or deny to such person any of the accommodations * * * thereof ". (Emphasis mine.)

The words " any person " and " directly " or " indirectly ", when given their usual meanings, must include protection for white persons as well as Negroes who are rejected because of race. To all but the naïve, it is clear that a white woman may be the butt of a racial discrimination because she has elected to marry a Negro. I am convinced that both plaintiffs were rejected by the defendant because Mr. Hobson is a Negro and his wife is a white woman. Such a refusal; as applied to Mrs. Hobson, is a rejection of her because of her color. Unless " direct " and " indirect " discriminations are to mean nothing in the law, a white plaintiff must receive equal protection with her Negro husband. The law looks with favor upon marriage. The public policy of the State supports every presumption of the validity of a marriage (*Matter of Wells,* 276 App. Div. 822, affd. 301 N. Y. 796; *Brownell* v. *Brownell,* 74 N. Y. S. 2d 136; *Matter of Erlanger,* 145 Misc. 1), and New York does not frown upon an interracial marriage.

The modern view of New York's civil rights legislation is found in the acute insight of Mr. Justice BIJUR's dissenting opinion in *Cohn* v. *Goldgraben* (*supra*). There, a colored waiter in the defendant's restaurant located in Harlem claimed he could not serve a " ' colored and white person *together* ' ". The white person, so rejected, sued. After discussing the admonition of section 40 of the Civil Rights Law against direct or indirect refusal of accommodations on account of race, Judge BIJUR went on to say (p. 502): " It seems to me to be clear that plaintiff was, on the occasion in question, denied the privileges of defendant's restaurant because he was white. The defendant virtually said to plaintiff: ' If you were colored and came here with Williams you would be served, *but being white,* we will not serve you.' "

Judge BIJUR would have given the white plaintiff relief under the Civil Rights Law. The cited amendments to the Executive Law make it clear today that *any person* discriminated against because of color or race, whether directly or indirectly, is entitled to invoke the statute.

In effect, what the defendant's desk clerk said to Mrs. Hobson was that if she had been married to a white man, her reservation for a room would have been honored. If the rejection was

based upon some private theory of "social acceptability", where Negroes and whites are in intimate association, it is still offensive to the law. That kind of reasoning was overruled in *Johnson* v. *Auburn & Syracuse Elec. R. R. Co.* (222 N. Y. 443).

The credible testimony confirms a racial discrimination against each of the plaintiffs. The Law Against Discrimination states its purpose to be "the protection of the public welfare, health and peace of the people of this state" (Executive Law, § 290). This is inclusive of *all* people, white as well as Negro, The old cases which would limit the application of the Civil Rights Law to Negroes only are clearly negatived by recent legislative enactments. This legislation is remedial in concept and liberal in its scope; it represents the public policy of the State which applies to the entire public.

For all of the foregoing reasons, I direct that the plaintiffs have judgment against the defendant in the amount of $100 each.