## INDUSTRIAL LINENS SUPPLY COMPANY, INC., Respondent,

v.

## MISSOURI COMMISSION ON HUMAN RIGHTS et al., Appellants.

### No. KCD 27502.

Missouri Court of Appeals, Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer Denied Aug. 2, 1976.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Charles A. Blackmar, Asst. Attys. Gen., Jefferson City, for appellants.

Hyman G. Stein, Charles Alan Seigel, St. Louis, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

This case originated in a proceeding before the Missouri Commission on Human Rights under Chapter 296. (All statutory references herein are to RSMo 1969.) The Commission by a two to one vote found that Industrial Linens Supply Company had denied employment to Kevin Jones, a Negro, because of his race, and ordered Industrial Linens to take certain remedial affirmative action, including placing Jones at the top of its hiring list and giving him back pay. Industrial Linens petitioned the Circuit Court for review pursuant to § 296.050 and § 536.140 (the latter section being duplicated in Rule 100). The Circuit Court reversed. From that decision adverse to it, the Commission appeals to this court.

The ultimate finding of discrimination by the Commission was based upon the following subsidiary findings of fact, all of which are supported by substantial evidence. On September 5, 1972, Jones was seeking employment and for that purpose visited the Columbia, Missouri, Job Center and engaged in an interview with Mary Brencick, a Caucasian job counselor. While Jones was present, Brencick received a phone call from Truman Kay, route supervisor for Industrial Linens in Columbia. Kay stated that Industrial Linens had a position open as a truck route delivery salesman and requested an applicant for that position.

Brencick answered that she had an applicant in her office and would refer him immediately.

After approximately ten minutes had elapsed, Brencick received a second phone call from Kay inquiring about the applicant who was supposed to be referred to him. Immediately after this second phone call, Brencick and Jones left her office and arrived at the Industrial Linens' place of business in approximately five minutes. When they presented themselves to Kay, and Kay saw Jones for the first time, Kay informed them that the position had just been filled. Jones and Brencick then left, but Brencick turned back and came in alone to inquire into the matter further. At this point, Kay stated that Industrial Linens could not hire colored people as drivers/delivery salesmen for the reason that its customers would not do business with it if it had colored drivers. Kay also stated that the company had another position of the same type open; however he did not request or offer to receive any application from Jones with respect to the open position.

Neither the dissenting commissioner, the Circuit Judge nor Industrial Linens itself denies that the facts found by the majority of the Commission would constitute forbidden discrimination. However, all of them have denied the validity of the findings made by the majority of the Commission and the relief ordered, on the various grounds now to be separately discussed.

I.

The point most strongly urged by Industrial Linens is that it should not be held liable for the acts of its route supervisor Kay. In this connection, it points out that it is a subsidiary of and is operated as a single unit with Clean Coverall Supply Company, which has headquarters in St. Louis. Industrial Linens itself has a processing plant in Joplin and two drop-relay stations, one of which is in Springfield and the other in Columbia. The General Manager of Industrial Linens, Jim Weeks, works out of the Joplin office and is the only one having authority to hire or fire any employ-

ee at any of the three locations. Kay was in charge of the operations in Columbia whenever Weeks was absent. When a job opening occurs, in the usual course of events, Kay sought applicants through newspaper ads and calls to employment agencies. However, he had no authority to hire or fire. He received applications and passed on the information to Weeks, but the evidence does not disclose that he had any express right to recommend who should be hired. Kay was not a stockholder, officer or director and attended no company policy meetings. Clean Coverall and Industrial Linens both hire a considerable number of black employees, some of whom hold supervisory positions. There was no evidence that the acts and statements of which the Commission found Kay guilty were in accordance with any company policy or pursuant to any authority to exclude blacks.

On the basis of those facts, Industrial Linens argues, the dissenting Commissioner believed, and the Circuit Court found that Kay's acts on September 5, 1972, did not bind Industrial Linens. In this respect the Circuit Court held: "The burden of proving the agency of Truman Kay and the scope of his agency is upon the complainant . . . It is also well settled that any statement or admission by an agent to be binding upon his principal must be made within the scope of his authority. There is nothing in this record to show that Truman Kay was anything more than a route supervisor, and that he had no authority to employ this complainant or anyone else."

This ruling is in contradistinction to the following finding of the Commission: "From the evidence presented at the public hearing, the hearing panel majority holds that Truman Kay, an employee of Respondent, did in fact have actual or, alternatively, apparent authority to screen applicants for job vacancies with Respondent. The majority holds that Mr. Kay was an agent of the employer with respect to the filling of job vacancies and the employer by extending apparent authority to Mr. Kay is liable for his actions. The panel holds that

Mr. Kay, and hence the Respondent, did in fact fail or refuse to employ the Complainant on account of his race."

The quoted reasoning by the Commission changed somewhat in the course of oral argument before this court, at which time the Commission took the position that Industrial Linens was liable for anything done by Kay in the course of his employment, just as any employer is liable under the principle of respondeat superior in an action for negligent injury caused by its employee to a third party.

■ It is unnecessary for the purpose of this opinion to decide whether either the doctrine of apparent agency or the doctrine of respondeat superior should be applied in full rigor in proceedings to enforce this type of governmental regulation. For present purposes it suffices to say that an employer is prima facie liable for the acts of its employee done in the course of his duties, and the employer to escape that liability must at least undertake the burden of showing that the employee's acts of discrimination were contrary to express instructions not to discriminate.

This rule has been applied in a series of cases under the New York statute prohibiting discrimination in regard to public accommodations. *Hubert v. Jose,* 148 App. Div. 718, 132 N.Y.S. 811 (1912); *Jackson v. Imburgia,* 184 Misc. 1063, 55 N.Y.S.2d 549 (1945); *Hobson v. York Studios,* 208 Misc. 888, 145 N.Y.S.2d 162 (1955). It is to be noted that the New York statute being implemented in those cases was quasi-criminal in that violation of the statute was punishable by fine. Since the Missouri Discriminatory Employment Practices statute, Chapter 296, is purely remedial in character, there is more reason to hold the employer to a high degree of responsibility than was true in the New York cases.

Of particular interest is the fact that the New York cases just cited rely in part upon the authority of an early Missouri decision, *Town of Kirkwood v. Autenreith,* 21 Mo. App. 73 (1886), in which it was held that the

sale of liquor by an employee is prima facie evidence of liability on the part of the unlicensed employer, but that the authority of the employee may be rebutted by proof that the sale was made without the employer's knowledge and is disobedience of his order. The court in *Autenreith* quoted from and reiterated its opinion in an earlier appeal:

"The evidence made out a *prima facie* case, if the jury believed the statement of the witness. Under the old dramshop law, where one was charged with having sold wines, liquors, and suffering the same to be drunk in his grocery store, it was held that the fact that the liquors were drunk in the defendant's grocery was presumptive evidence that this was done with his permission. He had control in his house, and if he forbade the drinking it was for him to show it in his own defense. *Casey v. The State,* 6 Mo. 646."

See also *United States v. United States Steel Corp.,* 371 F.Supp. 1045, l. c. 1054[4] (N.D.Ala.1973) modified on other grounds, 520 F.2d 1043 (5th Cir. 1975).

■ Applying the rule of those cases here, the record in this case contains no evidence to show that Industrial Linens ever instructed Kay (or for that matter any other employee) not to discriminate. Moreover, even after the complaint was filed in this case, Kay received no reprimand or any other disciplinary action.[1] On this record Industrial Linens has failed to carry its burden of proof on this, its principal defense.

Under the evidence Kay unquestionably was acting within the scope of his duties in seeking applicants and interviewing prospects. In the course of performing those duties, he effectively diverted Jones out of the stream of applicants who could be even considered by Weeks. In the absence of evidence showing that Industrial Linens ever instructed Kay affirmatively not to discriminate, his actions are binding upon Industrial Linens.

## II.

■ The dissenting Commissioner, the Circuit Judge and Industrial Linens all challenged certain other findings by the Commission. One of the findings so challenged was that Industrial Linens had a second driver's job available on September 5, 1972, even after one had been filled just minutes before Jones appeared at the Industrial Linens' place of business. Brencick firmly testified that Kay did so advise her when she came back to talk to him alone. Although Kay himself denied having made such a statement, nevertheless the testimony of General Manager Weeks buttresses the conclusion that a second job was available both immediately before and immediately after September 5, 1972. Weeks' testimony was somewhat equivocal in this regard, but nevertheless the following portion of his testimony supports the majority of the Commission:

"Q Do you remember telling the Commission representative that there was a vacancy from August 26th, 1972 until September 29?

A I checked that with somebody. I think I told him that, yes.

Q That is your testimony today, that there was a vacancy?

A Yes.

MR. SEIGEL: What time was that?

MR. BLACKMAR: August 26th 1972 until September 29, 1972.

A There was at least one vacancy during that time, yes.

BY MR. BLACKMAR:

Q In Columbia?

A Yes.

Q For a driver-route salesman?

A Yes.

Q Was this the vacancy on Route 22?

A I don't remember the route number, but I would say it was probably 22.

\* \* \* \* \* \*

"Q And you told him in relation to one of the two vacancies, that you were

---

1. General Manager Weeks admitted on cross-examination that Kay reported to him that he (Kay) in talking to Brencick had "said something about that coloreds didn't work out on the routes, or something, that he said something like that."

sending a man from Joplin and to not worry about taking any more applications?

A  Yes.

Q  What were your instructions to him in regard to the other vacancy at that time?

A  There were no instructions on it.

Q  So presumably he had no instructions from you—

A  Right.

Q  —to prevent him from continuing to take applications from anybody that came in, in fact, from everybody that came in, for that second vacancy?

A  Right.

Q  Did you have any conversations with Mr. Kay to indicate why he didn't take an application from Mr. Jones for the second vacancy?

A  No."

Therefore, the Commission did not err in finding that there were two openings for driver salesman, only one of which was filled at the time Jones came in to make application.

■ However, there are two important matters as to which the Commission did err. First of all the Commission incorrectly recited Weeks' testimony as being "that the company did not have any Blacks employed as driver/delivery salesmen and that 'coloreds didn't work out on the routes'." On this appeal the Commission concedes that Weeks did not so testify. Furthermore, the Commission found that "Respondent has been engaged in a pattern and practice of discrimination with regard to the placing of Black applicants in route salesmen positions." The Commission now also concedes that the record contains no evidence to support that finding.

These incorrect findings, as the Commission now also concedes, may very well have influenced the scope of affirmative action which the Commission ordered Industrial Linens to take. This error calls for a remand of the proceedings to the Commission for reconsideration of relief to be ordered.

III.

■ The trial court found and Industrial Linens repeats that the record fails to show that Jones was qualified to perform as a driver. This deficiency in the record cannot impair the validity of the finding of discrimination, since Kay denied Jones any consideration without regard at all to his qualification or disqualification as a driver.

This matter does however bear upon the order for affirmative action. The Commission as part of the remedial relief ordered that Industrial Linens offer employment to Jones upon the first available opening. The evidence shows that a driver salesman must meet the physical standards prescribed by the Interstate Commerce Commission. If Jones does not, then this part of the order becomes highly inappropriate. Upon remand, the Commission should take evidence and make a finding of fact with respect to Jones' qualifications if it intends to order that Jones be offered employment.

IV.

■ Part of the affirmative relief ordered by the Commission was that Industrial Linens compensate Jones for wages lost as a result of the discriminatory act. The statute does not authorize such a remedial order in this case.

■ Section 296.040.6 provides that if the Commission finds that an unlawful employment practice has been committed, then the Commission may order the respondent "to require reinstatement or upgrading of employees with or without back pay, to require hiring * * * as in the judgment of the commission will effectuate the purposes of this chapter, * * *." The authority to order back pay is clearly limited to a case where the complaining party had already been an employee at the time of the discrimination against him. The granting of this relief is not extended by the statute to the case of one who had never been an employee and who had merely been refused employment.

Accordingly in reframing remedial relief, the Commission must eliminate from the remedy any order for back pay to Jones.

## V.

■ The trial court found and Industrial Linens now repeats that the Commission had no jurisdiction because the record fails to show that it complied with the mandate of Section 296.040.2 that before holding a hearing the Commission must designate a commissioner who "shall immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion, and shall report his findings to the commission." This finding by the trial court fails to give any recognition or effect to the following conclusion of law by the Commission: "The record shows that the Commission designated a Commissioner for investigation, that a Finding of Probable Cause was made, followed by an attempt at conference, conciliation and persuasion to eliminate the unlawful practice. The Commission noting this failure referred the case to the Attorney General's office and a public hearing was held."

The Commission points out in its argument before this court that no challenge was ever made by Industrial Linens to the fact that efforts at conciliation had been made, and the Commission further points out that by the specific terms of § 296.040.2 the Commission may not disclose the contents of the report or what occurred in the course of conciliation endeavors and that by the provisions of § 296.040.4, the "endeavors at conciliation shall not be received in evidence." The Commission states that it did not place proof of the conciliation efforts in the record because of those statutory provisions; and it complains that when the trial court made an issue as to this matter for the first time it asked leave to supplement the record to prove the conciliation efforts, but that the trial court refused to open the record for that purpose.

Absent a specific and timely challenge by Industrial Linens that conciliation endeavors had not been made, the recital in the Commission's conclusions, quoted above, must be held sufficient. It should be noted that in connection with this point Industrial Linens suggests in its brief that "an affida-vit could have been filed before the Commission or in the Circuit Court to the effect that the procedure of 'conference, conciliation and persuasion' had been followed by the Commission." If an affidavit would have been sufficient in this regard, it is most difficult to perceive why a formal conclusion to that same effect in the Commission's findings of fact, conclusions of law and order should not also be sufficient.

On remand, if there is a real issue with respect to conciliation efforts, Industrial Linens can make its objection to the Commission and have the record supplemented in some appropriate fashion, and the record as so supplemented will be subject to judicial review.

The judgment of the Circuit Court is reversed and the cause remanded with instructions that the proceedings be remanded to the Commission pursuant to the authority of § 536.140–5 and Rule 100.07(e).

All concur.