BENJAMIN ALMEIDA *vs.* UNITED STATES RUBBER COMPANY.

AUGUST 4, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

· FLYNN, C. J. This is an original petition for ordinary and specific workmen's compensation and for medical expenses under general laws 1938, chapter 300. After an extensive hearing in the superior court a decree was entered denying and dismissing the petition on the ground that the employee's personal injury did not arise out of and in the course of his employment. The case is before us on his appeal from that decree.

In general it appears that prior to April 1951 petitioner was employed as a "floorman" in the lead press department of respondent's manufacturing plant; that, in accordance with the provisions of a collective bargaining contract between respondent and a labor union, petitioner then requested and was transferred to the position of "vulcanizer helper"; that the duties of a vulcanizer helper were entirely different from and did not include the operation of a lead stripping machine, which was under another department; and that petitioner knew and understood at all times that the operation of a lead stripping machine was not within the scope or course of his regular employment as a vulcanizer helper and was not connected with or referable to such employment or the conditions under which it was required to be performed. Despite this knowledge, on March 5, 1952 when working on a night shift he took it upon himself to go to the other department where he started a lead stripping machine which was then idle and unattended. While he was operating the machine a leaded cable broke and in attempting to fix it his fingers were caught and injured, requiring amputation of two phalanges of his left index finger.

At the time when petitioner started this machine and during his operation of it the regular operator was not present, as he had gone to another room to smoke. The latter never requested petitioner to start it and did not know, until after the accident, that he had been operating it. Likewise none of the supervisors or foremen were present.

The petitioner had never requested from anybody permission to operate the machine, and nobody in authority had expressly requested, ordered, or permitted him to operate it. He admitted he was operating the machine solely for his own purpose to obtain experience in the hope of ultimately improving his ability to earn more pay as a machine operator.

In addition to these undisputed facts, further testimony by and for petitioner was introduced in an effort to establish that he and other named employees, who were not machine operators, had previously operated such machines many times; that respondent had notice thereof and through at least one supervisor had acquiesced in such practice or course of conduct; and that petitioner had never been expressly ordered not to operate such machine, although he recognized it was not included within the duties of or conditions incident or referable to his employment as a vulcanizer helper. On the other hand, respondent summoned every available employee who had been named, as well as its foremen and supervisors, to refute the inference or claim that there was such conduct by vulcanizer helpers or acquiescence therein by the employer. Such a practice, according to respondent, would have violated the terms of the collective bargaining contract with the union.

Under his reasons of appeal petitioner's principal contention is that the words "arising out of and in the course of his employment" should be given a liberal construction because the statute is remedial; that the evidence is uncontradicted and the legal effect thereof requires as a matter of law the conclusion that petitioner's injury comes within such a liberal construction; and that certain cases in this state and some in other jurisdictions justify such contention and application.

We do not agree with this fundamental contention. The controlling issue here is whether petitioner has established that he sustained a personal injury *arising out of* and in the

course of his employment, connected therewith and referable thereto. G. L. 1938, chap. 300, art. I, §1, as amended by P. L. 1949, chap. 2282, section 1. In determining this question it is true that a liberal interpretation of the provisions of the statute should be given to effectuate its particular purposes. *Condon* v. *First National Stores, Inc.,* 65 R. I. 129. But that does not mean that by construction we should completely nullify a clearly-expressed basic provision of the workmen's compensation act. A petitioner, as here, still has the burden of establishing that he suffered a personal injury "arising out of and in the course of his employment, connected therewith and referable thereto."

The test to be applied in determining whether petitioner suffered such an injury has been stated in several cases. In *Di Libero* v. *Middlesex Construction Co.,* 63 R. I. 509, 517, we adopted the test that an injury which occurs in the course of the employment may be said to arise out of the employment when such injury is the result "of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed." That test was expressly reaffirmed in *Nowicki* v. *Byrne,* 73 R. I. 89, 92, where this court also pointed out: "But in every case there must be apparent some causal connection between the injury and the employment or the conditions under which it is required to be performed, before the injury can be found to arise out of the employment."

This interpretation is not only in conformity with the weight of pertinent authority but also has been consistently applied by this court to the particular facts appearing in other cases. See *Corry* v. *Commissioned Officers' Mess (Open),* 78 R. I. 264; *Remington* v. *Louttit Laundry Co.,* 77 R. I. 185; *Johnson* v. *Lanifero,* 73 R. I. 238; *Wegimont* v. *Argonne Worsted Co.,* 69 R. I. 360. The immediate question therefore is whether in the instant case petitioner's injury comes within the interpretation thus given to the statute. He contends that the evidence is wholly uncontradicted and

that the legal effect thereof requires, as a matter of law, a conclusion different from that reached by the trial justice.

We cannot agree with this contention. The fundamental fallacy therein is that petitioner erroneously assumes that the evidence is uncontradicted. In our judgment the issue is not determinable upon the legal effect of undisputed testimony, as he argues, but is a question of fact to be decided on conflicting evidence. So far as the testimony is uncontradicted, it clearly shows that the operation of the lead stripping machine did not arise out of and in the course of his employment as a *vulcanizer helper;* nor was it connected therewith or referable to such employment or to any conditions under which he was required to perform such work or which were reasonably incidental to the customary performance of his regular duties. There was no emergency to prompt the operation of the lead stripping machine by petitioner and admittedly he was injured while operating such machine without request, assignment or knowledge of any supervisor or foreman, and without any unusual conditions that could be reasonably connected with or referable to his employment. Therefore on this part of the evidence he was a meddler operating a machine entirely outside the course of his employment and solely for his own convenience and purpose.

The other portion of the evidence, on which petitioner must rely to succeed, is conflicting. It deals with respondent's alleged acquiescence in a practice or course of conduct previously followed by petitioner and other named employees, who were *not* machine operators, so as to expand the scope of his employment to include this operation or to create an estoppel against the employer from claiming otherwise. The petitioner's testimony in this regard is not always clear as to the details of certain incidents on which he bases his claim that respondent, through its supervisors or foremen, knew of and acquiesced in the previous operation of a lead stripping machine by him and others, as to

whether certain of his references to the *operation* of such a machine meant operating alone or helping an authorized operator, and whether at such times he and the others were vulcanizer helpers and not floormen in another department.

However, if we take petitioner's testimony at its face value as tending to establish in some degree the respondent's knowledge and acquiescence in the operation of lead stripping machines by petitioner and others who were not machine operators, such testimony is not uncontradicted. The respondent presented testimony from every available employee who had been named by petitioner, as well as its supervisors, foremen and superintendent, to refute such a claim. No useful purpose will be served by reciting in detail all the testimony of such witnesses, which takes up much of the three volumes of transcript. It is sufficient for our purposes to state generally that the testimony of most of the employees, when carefully examined, actually contradicts petitioner's testimony as to the basic facts on which he relies.

Some of these witnesses flatly denied ever having operated a lead stripping machine before they became authorized operators, which was contrary to petitioner's testimony. Others indicated that as *floormen* in the lead press department, where the machines were located, they had at times *helped* the operator to prepare the machine for operation, or had *helped* the operator to steer on the cable on a takeup reel four to six feet away from the stripper, or had *pushed a button* to start the machine while the operator would put the wire through rollers to the rack some eight or ten feet away on the other side or in front of the stripper. None of them, however, testified that while he was a *vulcanizer helper* in another department he alone had ever attempted to thread or lace a lead stripping machine or alone had actually operated one in the absence of the operator and in the presence of a foreman or supervisor without request

or assignment. And apart from conclusions, some if not most of them testified they never saw any vulcanizer helper operate the stripper alone in such circumstances.

The supervisor whose acquiescence was relied on in particular flatly denied that petitioner or any vulcanizer helper or even a floorman had ever been observed by him in the act of operating a stripper alone without specific assignment. He pointed out that the operation which petitioner and other floormen were permitted to do occasionally was helping an operator to prepare the machine for regular operation, or helping to steer cable on the takeup reel, or pressing a button to start the machine for the operator. These, he explained, were part of *the duties* of a *floorman* in the lead press department under him and petitioner may have assisted *when he was a floorman* in that department. On only one occasion had even a lead press floorman been *assigned* to operate a stripper in the absence of the regular operator and that was in an emergency.

Certain other witnesses testified to a similar effect, so that in general the basis for petitioner's claim as to respondent's knowledge and acquiescence in a practice or course of conduct followed by himself and other vulcanizer helpers with reference to operating lead stripping machines alone rests at best upon disputed facts and not on uncontradicted evidence. In the circumstances we are not required to decide upon such conflicting evidence whether petitioner's injury would have been compensable if the trial justice had found in his favor. Nor have we here a case where he was hurt while helping an operator in certain permitted operations, or helping an operator in an emergency whether by direct request, assignment or otherwise, or where he was performing some work fairly connected with or referable to the conditions under which his regular employment was usually performed. It is well settled that we do not weigh the evidence but examine it only to see if there is any legal evidence to support the trial justice's

findings of fact. There being such evidence on the basic issue, such findings in the decree in the absence of fraud are conclusive under the act and the petitioner's contention must fall.

In our judgment petitioner receives no assistance from *Wegimont* v. *Argonne Worsted Co., supra,* upon which he strongly relies, and other cases above cited. He apparently misconceives the law which is enunciated in those cases. In some the evidence was undisputed and in all of them we applied to the particular facts and decisions appearing therein the rule previously set forth. In our opinion application of the same principle of law to the conflicting evidence and findings in the instant case requires us to support the decision of the trial justice.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Michaelson & Stanzler, Julius C. Michaelson,* for petitioner.

*Ambrose W. Carroll,* for respondent.