**Winifred McGill, Plaintiff-Appellant, v. 830 S. Michigan Hotel, Modern Management Co., a Corporation, and K. Golden, Defendants-Appellees.**

Gen. No. 50,673.

First District, First Division.

January 31, 1966.

Winifred McGill, pro se, of Chicago, appellant.

Goldberg & Levin, of Chicago (Marvin Sacks, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Winifred McGill, proceeding pro se, seeks to recover statutory damages for violation of her civil rights. She appeals from an order which struck her fourth amended complaint and dismissed her action.

Plaintiff, a hotel guest, bases her action on a series of weekly rent increases which commenced November 7, 1960, and have remained effective to the present time. Plaintiff alleges these rent increases were and continue to be violations of sections 125 and 126 of chapter 38,

Ill Rev Stats 1961, and Article 13 of chapter 38, Ill Rev Stats, effective as of January 1, 1962.

The original complaint was filed on October 6, 1961, and was answered November 21, 1961. When it came up for pretrial on January 13, 1964, the complaint was ordered to be amended, and four amended complaints have been filed.

In her fourth amended complaint, plaintiff alleges, in summary, that she is a white person, and on September 12, 1960, became a tenant of the defendant, 830 S. Michigan Hotel, and occupied Room 410 at a weekly rental of $21.50; that because she received Negro visitors in her room, the weekly rental for plaintiff's room was increased to $26 on November 7, 1960, to $28 on December 10, 1960, and to $30 on January 16, 1961, for a total increase of 40% over a 10-week period; and defendants have continued to charge her the highest figure only because of her Negro visitors. Plaintiff further alleges there has been no equal increase in the weekly rentals asked of other guests at 830 S. Michigan Hotel from September 12, 1960, up to the present time; that "the defendants have not redecorated and repaired plaintiff's room, #410 when and as they have the rooms surrounding room #410"; and that "the defendants have wilfully, maliciously, illegally and unconscionably exploited plaintiff's desire and necessity to live in the area of the 830 S. Michigan Hotel, and the difficulties which she faces in securing suitable accommodations, because she is a white woman who associates with Negroes, by continuing each week to charge her an excessive and discriminatory rate for her room . . . ."

The complaint also alleges:

"20. Shortly after September 12, 1960, and at various times thereafter, plaintiff, who is white, received Negro visitors at the 830 S. Michigan Hotel.

353

"21. On various occasions while plaintiff was receiving a Negro visitor at the 830 S. Michigan Hotel, the defendants . . . committed the following acts:

"a. K. Golden untruthfully told plaintiff that guests of the 830 S. Michigan Hotel are not permitted to receive visitors.

"b. K. Golden refused to provide plaintiff with a written notice stating that guests of the 830 S. Michigan Hotel are not permitted to receive visitors.

"c. K. Golden and various agents and/or employees of the 830 S. Michigan Hotel and/or Modern Management Company told plaintiff and her Negro visitor that if she did not 'dismiss her guest,' they would call the police and have them arrested for 'loitering.' "

The Illinois Criminal Code in effect on September 12, 1960, contained a "Civil Rights" Act entitled "An Act to protect all citizens in their civil and legal rights and fixing a penalty for violation of the same," and sections 125 and 126 are pertinent here.

"125. All persons entitled to equal enjoyment of accommodations—Discrimination in price on account of race or color prohibited.] § 1. All persons within the jurisdiction of said State of Illinois shall be entitled to the full and equal enjoyment of the accommodation, advantages, facilities and privileges of inns, restaurants, eating houses, hotels, . . . subject only to the conditions and limitations established by laws and applicable alike to all citizens; . . . ."

"126. Penalty.] § 2. That any person who shall violate any of the provisions of the foregoing section by denying to any citizen, except for reasons applicable alike to all citizens of every race and color,

and regardless of color or race, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall for every such offense, forfeit and pay a sum not less than twenty-five ($25) dollars nor more than five hundred ($500) dollars to the person aggrieved thereby, to be recovered in any court of competent jurisdiction, in the county where said offense was committed; and shall also, for every such offense be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not to exceed five hundred dollars ($500), or shall be imprisoned not more than one year, or both."

The foregoing sections were repealed as of January 1, 1962.

The provisions of Article 13, chapter 38, Illinois Criminal Code, entitled "Violation of Civil Rights," became effective January 1, 1962, and have continued in effect up to this time.

"13–1. Definitions.] (a) . . . A public place of accommodation or amusement includes inns, . . . hotels, . . . and all other places of public accommodation and amusement.

"(b) . . . An operator of a public place of accommodation or amusement is any owner, lessee, proprietor, manager, superintendent, agent, or occupant of the public place of accommodation or amusement, or an employee of any such person or persons."

"13–2. Elements of the Offense.] A person commits a violation of civil rights when:

"(a) He denies to another the full and equal enjoyment of the facilities and services of any public place of accommodation or amusement because of race, religion, color or national ancestry; . . . ."

355

"13-3. Sanctions.] . . .

" (b) Suit for Damages. Any operator of a public place of accommodation or amusement who commits a violation of civil rights shall be liable to the person aggrieved thereby for not less than $100 nor more than $1000, to be recovered in an action at law in any court of competent jurisdiction."

Plaintiff prays for damages of $500 "for each discriminatory, unlawful written statement of rent due on room #410 which they submitted to plaintiff from November 7, 1960 to December 31, 1961, and of $1,000 for each unlawful, discriminatory written statement of rent due on room #410 which they have submitted to plaintiff since January 1, 1962, with the costs being assessed against defendants."

. Although a motion to dismiss admits all facts well pleaded in the complaint, the indispensable requirement of the complaint is that the allegations state a cause of action. The fourth amended complaint is to be construed most strongly against plaintiff, but she is entitled to the reasonable intendments of the language used. (Field v. Oberwortmann, 14 Ill App2d 218, 220, 144 NE2d 637 (1957).) Under the Civil Practice Act, pleadings are to be liberally construed with a view toward doing substantial justice between the parties, and no pleading is to be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim. (Crosby v. Weil, 382 Ill 538, 548, 48 NE2d 386 (1943).) The pleader should allege the ultimate facts to be proved and not allege the evidentiary facts which tend to prove the ultimate facts. (Levinson v. Home Bank & Trust Co., 337 Ill 241, 244, 169 NE 193 (1929).) "There is no clear distinction between statements of 'evidentiary facts,' 'ultimate facts,' and 'conclusions of law.' There is no provision in the Civil Practice Act defining a conclusion, and a precise definition as to what constitutes con-

356

clusions of law is impossible." Nichols, Illinois Civil Practice, Revised Edition, (1961), Vol 2, § 777, p 27.

Therefore, the issue on appeal is whether plaintiff's fourth amended complaint alleges ultimate facts sufficient to state a cause of action for the violation of plaintiff's civil rights and sufficient to bring the instant situation within the provisions of sections 125 and 126 and Article 13 of the Illinois Criminal Code.

Defendants contend that "plaintiff has no remedy under the Illinois Civil Rights Statute for any alleged discriminations against her for reasons other than her own race and color. She cannot prevail in her cause of action under the statute because of defendants' purported practice of discriminations against Negroes. No relief is provided for discrimination against third parties. The discrimination must be direct and personal and must be because of her own race and color. . . . [Plaintiff's] fourth amended complaint affirmatively shows that she, a white person, was not discriminated against because of her race or color."

Defendants also contended that Article 13 of chapter 38 is not applicable to the facts presented by the fourth amended complaint, because the last purported discriminatory rate increase occurred one year prior to the effective date of said statute.

The Illinois authorities on this facet of civil rights are limited. The authorities cited from other states are not sufficiently in point to warrant extended discussion.

As to sections 125 and 126, in Pickett v. Kuchan, 323 Ill 138, 153 NE 667 (1926), where our Supreme Court affirmed a verdict and judgment for damages for refusal to sell plaintiff a ticket of admission to a show given in appellant's theater, the court said (p 140):

> "The right of the State to regulate theaters and all places of public amusement is universally recognized. . . . The legislature undoubtedly had the

357

power to pass the act in question. Whether it acted wisely is a matter for it to determine. The judiciary have nothing to do with the wisdom or policy of legislation."

And at page 141:

"Its purpose is to regulate, for the promotion of the public good, certain businesses in which the public have an interest, and it is therefore remedial. The remedy for the breach of a remedial statute is an action in case to recover damages for the injuries sustained."

Defendants assert that "under the law of Illinois, the Civil Rights Act, being penal in its nature and being in derogation of the common law, must be strictly construed in determining its scope and effect even though it is intended as a remedial act." Cited is Cedar Park Cemetery Ass'n, Inc. v. Cooper, 408 Ill 79, 96 NE2d 482 (1951), where the court said (p 83):

"When a statute is penal in its nature, it cannot be extended by intendment or implication to embrace matters beyond its terms. . . . Where a statute has remedial features and is at the same time in derogation of the common law, it will be strictly construed when determining what persons come within the statute."

■■ However correct this statement may be, it is equally true that penal laws are not to be construed so strictly as to defeat the obvious intention of the legislature. (People v. Kirkrand, 397 Ill 588, 590, 74 NE2d 813 (1947).) Hence, we believe that the general rules of statutory construction should be applied here. "A statute or ordinance must be construed according to its intent and meaning, and a situation that is within the object, spirit and meaning of the statute is regarded as

within the statute, although not within the letter; and a situation that is within the letter is not regarded as within the statute unless also within its object, spirit and reasoning. People ex rel. Barrett v. Thillens, Inc., 400 Ill 224, 79 NE2d 609." Lincoln Nat. Life Ins. Co. v. McCarthy, 10 Ill2d 489, 494, 140 NE2d 687 (1957).

■ Both the new and the old "Civil Rights" Acts provide that a person commits a violation of civil rights when he denies to another the full and equal enjoyment of the accommodations, facilities and services of a hotel because of race or color (§ 125), or race, religion, color or national ancestry (Article 13–2(a)). We believe that the alleged unexplained rent increases following the alleged acts of hotel employees informing "plaintiff and her Negro visitor that if she did not 'dismiss her guest,' they would call the police and have them arrested for 'loitering,'" and "untruthfully" telling plaintiff that "guests of the 830 S. Michigan Hotel are not permitted to receive visitors," would be considered by reasonable men to be acts of discrimination against plaintiff that fall "within the object, spirit and meaning of the statute . . . although not within the letter." (People ex rel. Barrett v. Thillens, Inc., 400 Ill 224, 79 NE2d 609 (1948).) In our opinion, the race of the plaintiff is not the test of the violation. The determinative question is, were the rent increases and the attempted deprivation of plaintiff of the full and equal enjoyment of her hotel accommodations "because of race," either plaintiff's or her Negro visitors? If the acts complained of were, as alleged, "because of race," they come within the scope of the philosophy of the Illinois "Civil Rights" Acts. Otherwise, the general purpose of the acts would be severely limited.

■ We hold that the fourth amended complaint alleges a prima facie cause of action for statutory

damages under both Acts and, therefore, the complaint should be answered.

For the reasons given, the order striking the fourth amended complaint and dismissing the action is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

KLUCZYNSKI, P. J. and BURMAN, J., concur.