259 A.2d 847.

ANGELA BUFFI *vs.* JOHN G. FERRI.

DECEMBER 12, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. Angela Buffi complained to the Rhode Island Commission for Human Rights (then known as the Commission Against Discrimination) that her landlord had evicted her because she was associating with a Negro. The landlord denied the charge. The Commission believed the complainant, decided that her rights under the Fair Housing Practices Act (G. L. 1956, chap. 37 of title 34) had been violated, and issued a cease and desist order. The landlord appealed, and the Superior Court reversed, holding that the eviction of a tenant because of association with a Negro was not proscribed by the Act. We granted the Commission leave to file a petition for certiorari, and requested the parties to argue, inter alia, the question of standing. 105 R. I. 774, 248 A.2d 784. We find that the Commission had standing and that the landlord did not violate the Act.

Review of Superior Court judgments in matters of this kind is regulated by the pertinent section of the Administrative Procedures Act (G. L. 1956, §42-35-16, as amended by P. L. 1966, chap. 213, sec. 1). It provides that a party in

interest, if aggrieved by a final Superior Court judgment, may petition this Court for a writ of certiorari to review questions of law. Under this statute, as well as under others providing for a judicial review of administrative agency determinations, "* * * aggrievement results when the order, decision, or decree adversely affects in a substantial manner some personal or property right of the party or imposes upon it some burden or obligation." *New England Tel. & Tel.* v. *Fascio,* 105 R. I. 711 at 717, 254 A.2d 758 at 761-62. This interpretation of what constitutes "aggrievement," like most rules of general application, has its exceptions. One permits an agency itself to seek review, even though not technically aggrieved, if the public has an interest in the issue which reaches out beyond that of the immediate parties. *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172. 178, 133 A.2d 737, 741; *Tedford* v. *Reynolds,* 87 R. I. 335, 341, 141 A.2d 264, 267; *DeCesare* v. *Board of Elections,* 104 R. I. 136, 142, 242 A.2d 421, 426. (Joslin and Kelleher, JJ., dissenting)

In this case, quite clearly no personal or property right of the Commission has been adversely affected, nor has any burden or obligation been imposed upon it. Just as clear, however, is the public's vital concern that no person be denied housing accommodations because of his race or color, or because of his religion or country of ancestral origin. This public interest in the removal of the hateful barriers of discriminatory practices based upon race, color, religion or ancestry is substantial and very real; it transcends and reaches out beyond the interest of the individuals involved. In order to protect that interest the Commission, representing the people and acting for the general public, acquired standing to seek review of a Superior Court judgment which otherwise might have gone unreviewed.

Turning from the procedural to the substantive issue, we make clear initially that we do not condone the landlord's

conduct. To discriminate against a person because of the race or color of those with whom he associates is, in our judgment, no less racism and no less despicable than is discrimination against a person because of his race or color. Both are evils which any fair and decent sense of morality rejects. Our concern, however, is not with conduct which we consider reprehensible, but with scrutinizing the work of the legislature in order to ascertain whether the practice complained of in this case is prohibited, and whether the Act makes relief available to one who has been denied housing accommodations because of association with a black.

Civil rights legislation is purposed upon obliterating "the effect of a distressing chapter of our history." *Hamm* v. *City of Rock Hill,* 379 U. S. 306, 315, 85 S. Ct. 384, 390, 13 L. Ed.2d 300, 307. Undoubtedly this consideration, at least in part, motivated the enactment of this State's fair housing legislation whose general purpose is "* * * to assure to all individuals regardless of race, or color, religion or country of ancestral origin equal opportunity to live in decent, safe, sanitary and healthful accommodations anywhere within the State * * *." (§34-37-1.) In furtherance of that purpose the Act designates certain housing practices as unlawful. Among them is the one which the parties agree is relevant here. It provides that:

> "No owner, lessee, sublessee, assignee, managing agent, or other person having the right to sell, rent, lease, or manage a housing accommodation * * * shall refuse to sell, rent, lease, let or otherwise deny to or withhold from any individual such housing accommodation because of the race or color, religion or country of ancestral origin of *such* individual * * *." (emphasis supplied) (§34-37-4.)

There is no question about the literal meaning of the language. It is precise, plain and clear. In unambiguous terms it makes the race, color, religion or ancestry of a tenant or purchaser the test of a violation and it says that

housing accommodations shall not be denied to or withheld from any individual because of *his* race, color, religion or country of ancestral origin.

That literal reading presumptively gives the correct sense of the statute, and that sense cannot be ignored or disregarded merely because the legislature directed in §34-37-9 that the provisions of the Act shall be liberally construed in order to accomplish its purposes. *Almeida* v. *United States Rubber Co.,* 82 R. I. 264, 268, 107 A.2d 330, 332; *Weimar* v. *Newman,* 78 R. I. 221, 80 A.2d 887; *Martinuzzi* v. *Capitol Marble & Tile Co.,* 79 R. I. 115, 118-19, 84 A.2d 605, 607. While literalism will not yield to a liberal construction directive, it will give way if the words to be construed, when read within the context of the entire enactment, do not convey a sensible meaning, or if they lead to an absurd result, or contradict or defeat an evident legislative purpose. *Town of Scituate* v. *O'Rourke,* 103 R. I. 499, 512-513, 239 A.2d 176, 181; *Cabral* v. *Hall,* 102 R. I. 320, 325, 230 A.2d 250, 252; *Mason* v. *Bowerman Bros.,* 95 R. I. 425, 433, 187 A.2d 772, 776-77.

In applying these principles of statutory construction to the question before us, we look at the Act in its entirety, but we find nothing there which prohibits indirect discrimination or makes it unlawful for a landlord to restrict his tenant's visitors to a certain race or color. Instead, it makes the race or color of a tenant or purchaser the only test of a violation. While the legislature could, consistent with its general purposes, have gone further and interdicted third person discriminatory practices, all it elected to make unlawful was discrimination against an individual for reasons of *his* own race, color, religion or country of ancestral origin. Nothing elsewhere in the Act is repugnant to that election, nor do the words used to accomplish that effect, when read literally, suggest a meaning which is not sensible, or a result which is absurd, or a purpose which runs counter to the

expressed legislative policy of providing equal housing opportunities for all. The legislature said what it had to say unambiguously. While the legislature might have said what the Commission reads into otherwise clear and plain language, it elected otherwise. We cannot construe what needs no construction. Although we may believe that the legislature in implementation of its stated policy, could have gone further in protecting against discriminatory practices, this does not give us license to say that the prohibition before us means something different from the common import of its plain and unambiguous language. To do that would be to disregard what the legislature said solely because we believe it could or should have intended something else. That would be legislating, rather than adjudicating. The remedy for a statute whose reach does not go far enough is not construction, but amendment, and that is a legislative, rather than a judicial function. *State* v. *Duggan,* 15 R. I. 403, 409, 6 A. 787, 788.

The complainant resorts to decisions of other courts which recognize indirect and third-person discrimination as illegal. That exercise is of no real assistance because generally the statutes upon which those decisions are predicated cannot be equated with our own, and the decisions merely furnish a judicial definition of a particular legislative determination of what is and what is not discriminatory.[1]

---

[1]Usually in the cases relied upon, the civil rights enactments prohibit discrimination generally, rather than as is in this State where what is prohibited is discrimination against a person because of his *own* race or color. Thus, in *McGill* v. *830 S. Michigan Hotel,* 68 Ill. App.2d 351, 216 N.E.2d 273, at issue was legislation which made it a violation to deny "to another the full and equal enjoyment of the facilities and services" of a hotel "because of race, religion, color or national ancestry * * *." *Id.* at 355, 216 N.E.2d at 275. Because the legislature had not distinguished between direct and indirect discrimination there was an ambiguity and to resolve it the Court could turn to the broad underlying philosophy in order to ascertain the legislative intent. That opportunity is not open to us in this case because our statute, instead of being ambiguous, is clear. In

In this case our legislature has spoken on what constitutes unfair housing practices. It, and not the judiciary, has declared what is in the public interest, and if the legislature has not reached to the limits which the public demands, the remedy lies with the amendatory process, rather than with judicial interpolation. *State* v. *Duggan, supra.*

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed.

Motion for reargument denied.

*Herbert F. DeSimone,* Attorney General, *Charles G. Edwards,* Assistant Attorney General, for Rhode Island Commission for Human Rights; *Milton Stanzler, Philip Weinstein, Richard W. Zacks,* for Rhode Island Affiliate of American Civil Liberties Union, *amicus curiae; H. Seymour Wiley,* for Equal Opportunities Group, Chandler W. Johnson, John R. Kellam, Frederick M. Clark, Jr., Rev. E. McKinnon White, *amicus curiae.*

*Vincent A. Ragosta,* for defendant.

---

*Offner* v. *Shell's City, Inc.,* 376 F.2d 574, the legislation had a similar broad scope. The only case we have found which broadly construes confining legislation is *Hobson* v. *York Studios,* 145 N.Y.S.2d 162, and in our judgment the Court in that case was legislating rather than adjudicating.