# THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## v.

## CHARLES O'CONNELL.

*Fire Insurance—Conditions—False Statements—Agency—Evidence—Instructions—Tenancy.*

1. Any one who has the occupation or temporary possession of land, whose title is in another, is a " tenant, " though there was no formal leasing.

2. An insurance company can not complain that the statements in its policy were false, if its agent, who issued the same, was fully cognizant of the facts concerning which the statements were made.

3. In an action on a policy of insurance, which the company claims to be void by reason of false statements made by the insured's agent, it is competent for such agent to state what he told the company's agent concerning the property, when the policy was issued.

4. Where the agent, on the company's objection, is not permitted to

testify as to what was told him by the agent of the assured, the company can not, on appeal, contend that the evidence does not show that the assured's agent made a full statement in regard to the property.

5. Where the assured's agent fills the policy out at the request of the company's agent, he acts as agent of the company in doing so, and his false statements therein will not avoid the policy.

6. An instruction which assumes facts and conclusions from the evidence is properly refused.

[Opinion filed December 16, 1889.]

Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding.

Mr. George S. House, for appellant.

Mr. J. T. Donahoe, for appellee.

C. B. Smith, J. This was an action upon an insurance policy issued by appellant to appellee, insuring his barn in the sum of $800. The declaration is in the usual form, setting out the policy, with its various clauses and conditions, alleging the insurance of the barn and its subsequent burning while the policy was in force. The plea was the general issue. A trial resulted in a verdict for appellee for $836, and after overruling a motion for a new trial the court rendered judgment for appellee against appellant on the verdict. Appellant brings the case here on appeal. and assigns numerous errors, and asks for a reversal.

The property insured was described in the policy as a "one and one-half story frame building, shingle roof, occupied by a tenant as a private barn, situate on lot 1, block 2, S. W. ¼ section 5, Braidwood, Illinois." One of the clauses in the policy read as follows: "And any false representation by the assured of the condition, situation or occupancy of the property or any omission to make known any fact material to the risk, or an over-valuation, or any misrepresentation whatever, either in a written application or otherwise, * * * or if the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied, and so

Ins. Co. of Penn. v. O'Connell.

remain for more than ten days without notice to and the consent of this company, in writing, * * * then, and in every such case, this policy shall be void." Another clause in the policy contained the following language: "It is a part of this contract that any person other than the assurer who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance." The first and chief contention of appellant urged upon our consideration is that the description and occupancy of the property described in the policy as above set out, is false, and therefore a fraud upon the company, and that the other provisions above set out make the statement of the description and occupancy of the property a warranty of its truthfulness. And that if it is not true in any respect, then the policy is void and appellee is not entitled to recover.

The facts, as disclosed in this record and heard by the court and jury, are these: Appellee O'Connell owned the barn in question for a good many years—while he lived in Braidwood; he used it himself and kept it insured, through John H. Ward, an insurance agent in Joliet. Some time prior to the insurance in question appellee closed up his business in Braidwood and packed some wagons and butchers' tools and a variety of other things in this barn and locked it up, and moved to Chicago. At the time the former insurance upon the barn expired appellee wrote from Chicago to John H. Ward, who he supposed was still in the insurance business, and inclosed him money to pay for the insurance, and requested him to again insure the barn, but gave him no specific directions and made no written application. Mr. Ward knew the condition of the property and its location, and how it was occupied; but when he received this letter and the money to pay for the insurance, he had gone out of the insurance business and was no longer acting as an agent; however, being desirous to accommodate appellee, he called on James Egan, the agent of appellant, and asked him to take the risk. Ward testifies that he told Egan when he went for the insurance what the property

was, that it was one of his own risks ever since the property was built, and that he represented to Egan that the barn was occupied by a Mr. Burk, O'Connell's step-father, but that he could not tell Egan what was in the barn because he did not know, and that he told him all he knew about the barn or its occupancy. O'Connell testifies that when he locked up the barn and left, his step-father, Burk, looked after it, and took care of the barn and some other property he had and still owns there, and that he appointed his step-father to take charge of and look after the barn in his absence for him.

Patrick Burk, the step-father of appellee, testified that when appellee left Braidwood, he left the barn in his care and charge, and that he left the key with him, and that he had the key all the time. The front door was fastened by a padlock, and the back door fastened inside, and that he lived about a mile from the barn, and that he put hay in there to have it handy for market, and that he had control of the property for the plaintiff; that he went to the barn almost every time he went to Braidwood, and that he went to it almost every Sunday when he went to church, and walked around it, and sometimes went inside and looked about it; that he had charge of it at the time of the fire, and had some three or four tons of hay in it. Appellee testified that he had not "rented" the barn to any one, but that he had left it in the charge and care of his step-father. Appellant insists, in a very elaborate argument, that because there was no proof of a technical renting, that it follows that the statement in the policy that "the property was occupied by a tenant" as a private barn, was therefore false.

But this position is without force and can not be maintained That the property was occupied and used and in the charge and under the care of Burk, there can be no doubt. He was actually using it for storing his hay, in the ordinary mode of using barns. He had the key and was fully and rightfully invested with the care and possession of the building, under appointment from the owner; it was a matter of no importance that he did not live on the same lot with the barn, or even in the same town, for there is no declaration in the policy that

he was living or should so live on the lot or in the town. It is by no means necessary to create a tenancy, that there should be a formal hiring, leasing or letting the property in question. Webster defines a tenant to be "one who holds or possesses land or other real estate by any kind of right, either in fee simple, in common or in severalty, or for life or years or at will; one who has the occupation or temporary possession of land, whose title is in another." Under this definition (and it is the language of all the law books) Burk was clearly the tenant of O'Connell, and there was no misdescription nor falsehood in calling and describing him in the policy as the occupying tenant of appellee. We think, under the undisputed facts in the case, that the statement in the policy is not only substantially but technically true under the proof. But assuming that appellant is correct in its contention that said statement is false and a warranty, still it can not aid appellant. The proof is (and no one contradicts it) that Ward, who made the application for this insurance, told Egan, the agent of appellant, about the situation of the property. And that when Egan took the insurance he was advised of the condition and surroundings of the barn.

Upon the trial below Ward was asked by appellee to state all he told Egan concerning this property when he made the application, but the appellant objected to this testimony, and the objection was sustained by the court, but upon what principle we are not able to understand. This was the clear right of appellee. He had a right to show that Ward gave him every material fact truthfully, concerning the character of the barn and its occupancy, and that the company acted understandingly when it accepted the insurance, and that no fraud, in the shape of falsehood or concealment, was practiced upon it, for the purpose of meeting the charge of fraud from appellant. This is the law, as declared in Insurance Company v. Ives, 56 Ill. 402, and in Andes Ins. Co. v. Fish, 71 Ill. 621; but notwithstanding this erroneous ruling, procured on behalf of and in favor of appellant, still, Ward stated enough on cross-examination to show that Egan was fully advised as to the character of the risk, and knew what

he was doing. If Ward had not made a full statement of the character and occupancy of this barn to Egan, why was Egan not permitted to deny it, when he was on the stand, and asked for it by appellee, but not allowed by the court to answer on objection from appellant? It comes in poor grace and entirely too late from appellant, to now insist that the verdict was not supported by the evidence, when appellee was ready and anxious to make full and complete proof, so as to fasten liability on appellant, and yet was prevented from so doing by the court, on the motion or objection of appellant. A party will not be permitted to thus force error into a record and then himself take advantage of it on appeal.

But there is still another barrier in the way of this defense.

While it may be true under the language of this policy that Ward was the agent of appellee in making the application for the policy and in making whatever statements he made in order to induce the company to take the risk, and that appellee would be bound by such statements, still that would not make Ward the agent of appellee for anything he may have done for and on behalf of appellant at its own request.

It appears from the proof and such is the fact, that at the time this policy was made out Egan was a new and inexperienced agent, and did not know how to fill out the blank policy, and that he then called on Ward to fill out the policy for him and the company, and that Ward did then act on such request and filled up the entire policy for the company, and that while so acting for the company, with full knowledge of the character and occupancy of the barn, he wrote into the policy the statement which appellant now contends is false. It would be absurd to hold, even under the broad and sweeping language of the policy above quoted, that when Ward was filling up that policy, he was then acting for appellee. It was the right and duty of the company to issue and fill up their policy and if they chose to employ some one other than their regular agent to perform that duty, they must be bound both by his knowledge and his acts. See cases above cited. If then, Ward, with full knowledge of the character of the

risk, wrote in the policy the statement complained of, knowing it to be false, still the company would be bound by his acts, and especially would this be so when the insured had done or said nothing to mislead the company or to procure his agent, to be also employed by the company, as well, to perform its work.

We think the proof in this case shows no fraud or concealment in procuring this policy, and that the facts were fairly given to the agent of appellant at the time the policy was applied for; and that if it were true that the statement in the policy was not true in fact, still, the policy being filled up by Ward acting for the company, in doing that work, his statement, made upon his own information, must bind the company whether true or false, and that the company can not now be heard to contradict it.

It is also assigned for error that the court refused to give to the jury instructions No. 1, 2, 4, 4½ and 5 asked by the defendant, though no stress is placed upon this refusal in the argument; but we have nevertheless examined them carefully.

The first instruction asked by appellant simply directed the jury to find for the defendant. Under the evidence, as we have seen, such an instruction would have been manifestly erroneous and it was rightfully refused. The plaintiff made a clear *prima facie* case, and under all the evidence had a right to recover.

The court instructed the jury for defendant as follows: "3. The jury are instructed that if they shall believe from the evidence the defendant, by its policy of insurance of date March 14, 1887, contracted or agreed to insure the plaintiff against loss or damage by fire to the amount of $800 on his (said plaintiff's) " one and one-half story frame building, shingle roof, occupied by tenant as private barn," then and in that case the contract of insurance was the insurance of a frame building occupied as a private barn, and if the jury shall believe from the evidence that the said frame building was unoccupied as a private barn at the time the policy was issued, then the plaintiff can not recover in this suit, and the jury will so find." (*Given.*)

This instruction was more favorable to appellant than it was entitled to under the evidence, inasmuch as it left out of view entirely the information given to the agent as to the actual character of the occupancy. The second refused instruction only differs from the third in giving the reason why the plaintiff could not recover in addition to what had been stated in the third instruction given. Instructions number 4 and 4½ are not substantially different from number 2 and 3, and it was not error to refuse to repeat them. Number 5 was properly refused because it assumed to find facts and conclusions from the evidence and usurp the functions of the jury.

After a diligent examination of this record we are not able to find any error therein and are entirely satisfied with the finding of the jury and judgment of the court, and the judgment is affirmed.

*Judgment affirmed.*