Curt Wayne Meiners, a Minor, by Jerry Meiners, His Father and Next Friend, Plaintiff-Appellee, v. May Moyer, Defendant-Appellant.

Gen. No. 69–89.

Second District.

January 22, 1970.

Knight & Knight, of Rockford, for appellant.

Robert J. Shaw, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Curt Wayne Meiners, a minor, when age 18 months and while in the custody of a baby-sitter, was injured

when he fell from the inside front stairs of a two-family apartment house owned by the defendant, May Moyer. Defendant appeals from a judgment entered on a jury verdict awarding plaintiff $3,500 damages and an additional $3,500 in punitive damages.

Defendant claims error in denying her motions for a directed verdict during trial and her post-trial motions. The errors relied upon include claims that the evidence is insufficient, the form of verdict is improper and not supported by the pleadings or the evidence, the instructions are improper, and the judgment is excessive.

On August 16th, 1967, Jerry and Dorothy Meiners, the parents of Curt, resided across the street from the place of the accident. Virginia Henson, the daughter of a Mrs. Smith, who lived in the defendant's upstairs apartment, was used by the Meiners as a "baby-sitter" approximately three times a month during the nearly six months the Meiners had lived in the neighborhood. On the day of the injury, Curt was taken to the Smith apartment to be cared for by Virginia Henson.

Miss Henson had lived in the Moyer building for approximately three and one-half years with her family. She testified that balusters on the stairway, as shown in a photographic exhibit, had been missing since she moved in. She testified to several conversations between her mother and defendant's agent in which her mother asked if "he would please fix them." She had observed storm windows stored in the stairwell at the bottom of the stairway over a period of a year or more. On the day in question, Curt was playing with Virginia Henson's sister in the living room of the Smith apartment until a few seconds before Virginia heard her young brother, who had also been in the apartment, screaming her name. She ran out and then saw Curt lying at the bottom of the stairs on the broken glass.

Virginia Henson's sister and brother were too young to relate what happened.

Curt's father testified that on occasions prior to his arriving after the accident, when he had been in the Moyer apartment house, he had always gone up the back steps. He testified that after his son was taken to the hospital, he noticed that there were no balusters on the front stairway leading from the second floor, and he also testified to the broken storm windows.

There was evidence that the city of Rockford had made inspections of the property which had resulted in a notice to Mrs. Moyer that the property had been condemned on June 13th, 1967, as unfit for human habitation. The notice ordered the premises vacated within thirty days. The agent of the city of Rockford, who delivered the notice, recalled that the balusters were missing. He did not note this in his inspection report, nor did he note that the storm windows were stored in the stairwell.

The treating physician testified to injuries consisting of two lacerations to Curt's scalp and a laceration of the volar surface of the left, fifth finger; that scars to the child's forehead would be permanent but would not require plastic surgery; and that as of the date of the trial, March 17th, 1969, the finger did not close completely.

 While there was conflicting evidence, we are of the opinion that the evidence favorable to the plaintiff supports a verdict that defendant was guilty of both negligence and willful and wanton misconduct in permitting the stairway to remain in a dangerous condition, and permitting the storage of the storm windows in a place where a fall through the space left by the absence of a baluster could proximately result in injury to a child.

 Defendant urges that on the issue of proximate cause the case of McInturff v. Chicago Title & Trust Co., 102 Ill App2d 39, 243 NE2d 657 (1968) is controlling.

We do not agree. In McInturff the plaintiff's evidence, including facts and circumstances and the inferences to be drawn therefrom, did not more strongly support her theory of recovery than it supported inferences to the contrary. The circumstances in this case strongly support the conclusion that the only manner in which Curt could have fallen was through the open balusters onto the storm windows. Holsman v. Darling State Street Corp., 6 Ill App2d 517, 523, 128 NE2d 581 (1955); Thomas v. Smith, 11 Ill App2d 310, 316, 137 NE2d 117 (1956).

Defendant challenges the form of the verdict as submitted to the jury:

> "We, the jury find the Defendant guilty and assess the Plaintiff's damages against said defendant at the sum of $——— dollars, and we further assess punitive damages against said defendant at the sum of $——— dollars."

After a careful reading of the record, we are extremely doubtful that defendant properly preserved an' objection to the verdict form. However, counsel's remarks were ambiguous, and although they were more consistent with a position that no verdict on punitive damages should be given because counsel felt that the evidence did not support the case of willful and wanton negligence, we prefer to rule on the merits of the issue.

The complaint was filed in two counts, count I alleging negligence in the allowing of windows to be stored in the well of the stairs and in maintaining the stairway with balusters missing; and count II alleging the additional facts that the property was condemned after notice as being unfit for human habitation; alleging willful and wanton conduct in improperly storing the windows, in allowing the premises to remain in a state of

disrepair following such notice, and asking punitive damages.

■ The facts alleged and proved warranted punitive damages. See Kimes v. Trapp, 52 Ill App2d 442, 445, 202 NE2d 42 (1964). Basically the form of the verdict is held sufficient if the jury's intention may be construed not only from the actual verdict but from the consideration of the whole record before it. Kimes v. Trapp, supra. We find that the verdict was in proper form.

Defendant objects generally to numerous instructions refused and to numerous instructions tendered without specific argument. It is apparent from the record that in the conference on instructions much of the same approach was taken. On our own search of the record, the only question in this regard which requires consideration is the refusal of the court to give instructions tendered by the defendant that the minor was a licensee or trespasser on the premises rather than an invitee as the jury was instructed.

■ The jury was properly instructed, in our opinion, that May Moyer was under the duty to exercise ordinary care to keep the property reasonably safe for use by the minor plaintiff.

While we believe that the jury was properly instructed as to the essential element of the duty owed to the minor plaintiff, we do question the characterization of the minor as an "invitee." In our opinion the case should not be decided upon the invitee-licensee question at all. This distinction has been applied almost uniformly in situations where the plaintiff is suing his host. In the cases involving third parties on the premises in which the distinction is made between the invitee and the licensee status, it is usually in a case where the landlord leases the building or a part of it to a business operation and one of the employees of the business operation, or cus-

tomers of the business, are injured and sue the landlord.

It is in these situations where the customer has been "publicly invited" or there is "a mutual economic benefit." The argument by analogy that in this case babysitting was a "contemplated" use or that the landlord was the object of mutual benefit because his tenant was earning money and the tenant paid rent to the landlord is too tenuous.

The reason for the distinction itself has become obscured in hundreds of contrary cases throughout the country and the present movement appears to be toward a rule which holds that in cases where the old invitee-licensee rule would have been applied, that the principle should be that one in occupation or control of the premises owes a duty to take such care as is reasonable in all the circumstances of the case to see that visitors (excluding only trespassers) to the premises will be reasonably safe in using them for the expected purpose. See 95 ALR2d 992, Annotated, 1016–19.

██ Here we believe the duty is to be measured by the rule, set forth in a number of Illinois cases, that when a portion of the premises is rented and the landlord retains control of other parts of the same passageways for the common use of tenants, he has the duty of exercising reasonable care to keep the premises in a reasonably safe condition, and he is liable for injury which results to persons lawfully in such place from failure to perform such duty. B. Shoninger Co. v. Mann, 219 Ill 242, 245, 76 NE 354 (1906) ; Murphy v. Illinois State Trust Co., 375 Ill 310, 313–14, 31 NE2d 305 (1941). We find no reversible error in the giving of the instruction, however, since the duty has been correctly stated without regard to the label used.

██ We are also of the opinion that the amount of the verdict and judgment are supported by the evi-

dence and, therefore, within the province of the jury. Swearinger v. Klinger, 91 Ill App2d 251, 256, 234 NE2d 60 (1968).

 We have taken an oral motion with the case. Plaintiff asks that defendant's abstract be stricken and the appeal dismissed for failure to comply with rules. The abstract appears to be a verbatim copy of the entire record and this is a practice which we do not condone. However, the record in this case was not extremely long and we deny the motion and have determined the case on the merits.

The verdict and judgment below are affirmed.

Affirmed.

ABRAHAMSON and MORAN, JJ., concur.