ALORA TRICE, Admr. of the Estate of Ernest Trice, Deceased, Plaintiff-Appellant, *v.* THE CHICAGO HOUSING AUTHORITY, Defendant-Appellee.

(No. 56777; ▉▉▉▉▉▉▉▉

First District (2nd Division)—July 31, 1973.

HAYES, J., specially concurring.
LEIGHTON, J., dissenting.

Harold A. Liebenson, of Chicago, for appellant.

Canel & Canel, of Chicago, (Jay A. Canel and Erwin I. Katz, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff initiated the instant wrongful death action alleging that defendant Chicago Housing Authority proximately caused the death of plaintiff's minor son by breaching its duty of due care in the operation, maintenance and control of the building in which decedent lived. Plaintiff appeals from an order of the Circuit Court granting defendant's motion to strike the amended complaint for failure to state a cause of action.

Plaintiff and her son, Ernest, were tenants in defendant's 15 story building located at 2245 West Lake Street, Chicago, Illinois.* Defendant owned and operated the building and was in control of various areaways and common passageways in and around the building. Each of these common areas and passageways were provided with railings. On December 12, 1968, Ernest, while in an areaway outside his sixth floor apartment, was fatally injured when a television set, allegedly thrown over a railing from above, struck him on the head.

The amended complaint alleged that defendant owed decedent the duty of exercising due care and caution in the operation, maintenance, control and design of the building and common areaways; and that defendant owed its tenants the duty of exercising reasonable care to protect the areas and the tenants while in these common areas. The amended complaint alleged breach of these duties in that defendant carelessly and negligently designed the fences so that objects could be thrown over the fences from various floors of the building; that defendant carelessly and negligently maintained, controlled and operated the premises; that defendant failed to protect its tenants from the known hazard of articles being thrown over the fences onto the common passageways; that defendant permitted this dangerous condition to exist for a long period of time; that defendant failed to take adequate precautions to protect the safety of the tenants in the common areas after defendant had due notice of the dangerous condition; that defendant negligently failed to erect higher fencing to protect against the danger of objects being thrown over the existing railings; and that as a direct and proximate result of these negligent acts, decedent was struck by an item thrown over the railing.

Both parties have devoted much time and effort to discussing the question of the duty to provide tenants with adequate police protection. Plaintiff contends that defendant is statutorily empowered to provide its

* This building is one of several multiple dwellings in the housing project known as the Henry Horner Housing Project.

own police force. We do not believe that this issue need be decided in this case. We also need not reach the issue of whether a duty exists to protect tenants from harm caused by negligent acts of third persons. The principal issue before us is whether a landlord has a duty to protect tenants from intentional or criminally reckless acts of other tenants or third persons.

In determining whether allegations state a cause of action, we must accept all properly pleaded facts as true. *Follett's Illinois Book & Supply Store, Inc. v. Isaacs*, 27 Ill.2d 600, 190 N.E.2d 324.

## I.

The Restatement (Second) of Torts § 315 (1965) states that there is no duty to control the conduct of a third person to such a degree as to prevent him from causing physical harm to another, unless a special relationship exists between the actor and the other. Sections 314A and 320 of the Restatement enumerate certain special relationships, such as common carrier-passenger, business invitor-invitee and innkeeper-guest. In Illinois a duty has been found to exist when one of these special relationships has been shown. *Neering v. Illinois Central R.R.*, 383 Ill. 366, 50 N.E.2d 497.

Plaintiff has cited no case in which the "special relationship" has encompassed a landlord-tenant relationship. Plaintiff has alleged no facts of a contractual or statutory duty imposed on defendant to specially design its buildings to prevent injuries caused by criminally reckless acts of third persons. In effect, plaintiff urges us to create a new duty by expansion of tort liability.

■■ Plaintiff argues that *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208, has departed from the traditional view and has brought the landlord-tenant relationship into this special relationship category. Our supreme court in *Spring* imposed a duty based on an implied warranty of habitability, but strictly limited its holding:

> "[W]e hold that included in the contracts, both oral and written, governings the tenancies of defendants in the multiple unit dwelling occupied by them, is an implied warranty of habitability which is fulfilled by substantial compliance with the pertinent provisions of the Chicago building code." 50 Ill.2d 351, 366.

Nowhere in *Spring* did the court imply that a landlord has a duty to protect his tenants from injury caused by third persons. An implied warranty of habitability and an implied warranty against criminal or criminally reckless acts of third persons are not the same. On the basis of *Spring* alone, this court cannot expand the duty of a landlord.

## II.

■■ Plaintiff's principal allegation is that defendant owed a duty to protect its tenants in common areas from acts of third persons throwing objects over railings. These acts must be characterized as criminally reckless. In determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant must be taken into account. Imposition of a duty does not depend upon foreseeability alone. *Lance v. Senior*, 36 Ill.2d 516, 224 N.E.2d 231.

The cases cited by plaintiff are not persuasive. Plaintiff relies on *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477 (D.C. Cir.) and *Bass v. City of New York*, 61 Misc.2d 465, 305 N.Y.S.2d 801, rev'd, 38 App.Div.2d 407, 330 N.Y.S.2d 569, which held that a duty was imposed upon a landlord to provide adequate police protection for his tenants. *Bass* has been reversed by the New York Appellate Division which held that a municipal corporation providing police protection performs a governmental function, and cannot be charged with negligently performing that function. The special facts in *Kline* * have been held to have been a major factor in that decision. See *Williams v. William J. Davis, Inc.*, 275 A.2d 231 (D.C.C.A.); *Dietz v. Miles Holding Corp.*, 277 A.2d 108 (D.C.C.A.).

■■ It is a well recognized principle of tort law that a lessor who retains in his own control a part of the land which the lessee is entitled to use is liable to the lessee and others rightfully on the land for physical harm caused by dangerous conditions of the land under the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and could have made it safe. (*Loveless v. Warner*, 37 Ill.App.2d 204, 185 N.E.2d 392; Restatement (Second) of Torts § 360.) Customarily, the landlord's control of the common areas is associated with the obligation to maintain and repair, rather than with a duty to police. *Loveless v. Warner, supra; Heitz v. Hersheway*, 347 Ill.App. 571, 107 N.E.2d 272.

■■ In the instant case, the fact that risk of injury was known to defendant does not justify the imposition of this duty. In effect, a landlord would become an insurer against criminally reckless acts of third persons when some form of notice had been proved. Also, this duty would be imposed on all landlords, and would eventually be imposed on commercial and industrial landlords. Plaintiff's argument would not permit use of ordinary, usual and customary construction and arrangement of

---

\* In *Kline*, the high level of security in defendant's apartment building was a factor in planitiff's decision to rent. Thereafter the security was significantly reduced.

the premises. A duty to protect tenants from injuries caused by criminally reckless acts of third persons would be vague in that landlords would have no standard by which to determine which criminally reckless acts would come within this duty. Therefore, for these reasons, the amended complaint failed to state a cause of action and was properly dismissed. The order of the Circuit Court is affirmed.

Judgment affirmed.

Mr. JUSTICE HAYES specially concurring:

I concur in the opinion of Stamos, P. J. I wish to add some additional reflections of my own.

1. The trial judge dismissed plaintiff's complaint in this wrongful death action for failure to state a cause of action. In reviewing the dismissal, therefore, we must accept as true all well-pleaded facts in the complaint. The complaint consistently alleged that the television set was *thrown* by an unidentified co-tenant or third party from an upper story into and upon a portion of the retained premises then being properly used by plaintiff-tenant's minor son. In formulating the key issue presented by the complaint, we have characterized that alleged act of throwing as a criminal or criminally reckless act. I cannot conceive of a situation in which the throwing of a television set under the circumstances alleged in the complaint could be a mere act of ordinary negligence on the part of the thrower. I note also that plaintiff's brief describes the incident as a criminal attack on the child and again as a criminal act. For these reasons, I think our formulation of the key issue presented by the complaint is accurate. Nothing in our opinion deals with the issue of whether a landlord has any common law duty to protect his tenants against danger, in their use of the retained premises, from a known pattern of acts of negligence on the part of unidentified co-tenants or third parties.

2. Plaintiff points out that defendant was empowered by statute with "all powers necessary or convenient to carry out and effectuate the purposes and provisions of this Act" (Ill. Rev. Stat. 1969, ch. 67½, sec. 8—8), one of which was to provide safe and sanitary dwellings when there is found to be a shortage of such dwellings available to persons who lack the income necessary to enable them without financial assistance to live in such dwellings without over-crowding. Plaintiff pointed out this statutory authorization in order to demonstrate that the provision of security measures by defendant, in order to make the retained premises safe from the known danger posed by the pattern of criminal and criminally reckless acts of unidentified co-tenants or third parties, would not have been

*ultra vires* the defendant Municipal Corporation; in that manner plaintiff distinguished the case of *Goldberg v. Housing Authority of Newark* (1962), 38 N.J. 578, 186 A.2d 291. But the key issue is not what acts defendant is empowered to perform, but rather what acts defendant is under a common law duty to perform. It is clear that the empowerment cannot itself create the essential duty (See *New York Housing Authority v. Medlin* (1968), 291 N.Y.S.2d 672, *aff'd,* 316 N.Y.S.2d 149), and there is no statutory or contractual duty involved in this case. I note in passing that, even as to empowerment, the New York court in *Medlin* construed the statutory adjective "safe" to extend only to structural and Building Code requirements for safety.

3. The specific facts in *Kline v. 1500 Massachusetts Avenue Apartment Corp.* (1970), 439 F.2d 477, to which reference is made in the opinion of this court, are that, at the time defendant had leased an apartment to plaintiff, defendant had voluntarily undertaken to provide lobby security twenty-four hours a day, owing to a known hazard of criminal assault by unidentified third parties upon tenants using the common hallways. Defendant, thereafter, had significantly reduced the lobby security, and the assault rate in the building had increased. Having voluntarily undertaken to provide plaintiff, when plaintiff became a tenant, with a specific level of security against the criminal acts of unidentified third parties, defendant was held negligent in having failed to restore that level of security in the face of a known significant increase in the hazard after defendant had reduced the security level. While it is not clear that the holding in *Kline* was based on this negligent omission by defendant, still the holding must be read in the light of its facts, and there are no similar facts in the instance case.

4. It has been suggested by plaintiff in this case that the duty recognized and imposed on a lessor by reason of an implied warranty or habitability established in *Jack Spring, Inc. v. Little* (1972), 50 Ill.2d 351, 280 N.E.2d 208, is available to plaintiff as the common law duty upon which to predicate her case. Defendant, however, calls our attention to the fact that the scope of the implied warranty of habitability established in that case was carefully limited to compliance by the lessor with the provisions of the applicable Building Code, and that defendant herein is not alleged to have violated any such provisions. I note in addition that the breach of the lessor's duty recognized and imposed in that case was being used as a shield by a tenant in an action of forcible entry and detainer brought against the tenant when the tenant withheld rent. The case, therefore, does not necessarily establish that the same duty would be recognized and imposed, where, as here, the tenant paid the rent and then sued the lessor for money damages

for wrongful death; and is, where the tenant sought to use the implied warranty of habitability as a spear for unliquidated damages rather than as a shield. Hence, even if we were of a mind to expand the scope of the implied warranty of habitability established in *Jack Spring, Inc. v. Little* to encompass the fact situation involved in the instant case, there would still remain the question of its availability as a spear rather than as a shield.

I would not hestiate by judicial decision to expand the scope of the implied warranty of habitability to encompass the fact situation alleged in the instant complaint in a case in which that expanded warranty was being used as a shield by the tenant to justify the withholding of rent (or even to establish a constructive eviction), because in such situations the economic consequences to the lessor are limited to his loss of rent. But where the expanded warranty is sought to be used as a spear in an action for money damages for wrongful death, I think that the economic and social consequences to our society and to tenants themselves, which would be involved in the judicial imposition of such an enlarged duty, are so incalculable as to make any such action appropriate solely for the legislature.

I leave open the situation in which the identity of the throwing tenant or third party is known to the lessor, who then fails to exercise a power which he has to evict the known throwing tenant or to control the access to the retained premises of the known throwing third party so as to prevent the repetition of the danger.

Mr. JUSTICE LEIGHTON dissenting:

It is a maxim of our civil procedure that pleadings shall be liberally construed with a view to doing substantial justice between the parties. *Crosby v. Weil*, 382 Ill. 538, 48 N.E.2d 386; *McGill v. 830 So. Michigan Hotel*, 68 Ill.App.2d 351, 216 N.E.2d 273; Ill. Rev. Stat. 1969, ch. 110, par. 33(3).

In this mundane case, plaintiff alleged that on December 12, 1969, she and her son, Ernest, were defendant's tenants. This allegation stated ultimate facts which would establish the special relation of landlord and tenant. (*Insurance Co. of State of Pennsylvania v. O'Connell*, 34 Ill.App. 357; I.L.P. Landlord and Tenant § 2, 51C C.J.S. Landlord and Tenant § 1.) Plaintiff alleged that defendant, her landlord, controlled the common area and passageways in the building where she and her son were tenants. This allegation stated facts which would establish a legal consequence that follows the relation of landlord and tenant. As my brothers in the majority recognize, a landlord who retains control of common area and passageways has the duty to exercise reasonable care in keeping

those portions of his premises in a reasonably safe condition. *Loveless v. Warner,* 37 Ill.App.2d 204, 185 N.E.2d 392; *Meiners v. Moyer,* 119 Ill.App.2d 94, 255 N.E.2d 201; Restatement, Second, Torts § 360; I.L.P. Landlord and Tenant § 302.

In addition, plaintiff alleged that for a long period of time, in the common area and passageways of the building in which she lived, there existed a dangerous condition caused by articles being thrown from other stories, a condition about which defendant either knew or should have known. She alleged that in breach of the duty it owed her and her son, defendant carelessly and negligently failed to take adequate precautions to protect the safety of its tenants after defendant had notice of numerous acts of prior accidents and injuries to tenants from items thrown over fences in various stories of the building; that defendant carelessly and negligently failed to erect higher fences or place barricades or wire over the open areas of the porches in order to protect its tenants in the common area and passageways of defendant's building; and "[t]hat as a direct and proximate result of one or more of the above set forth wrongful and negligent, and willful and wanton acts, an item was thrown over a railing of the aforementioned fence, striking Ernest Trice [plaintiff's son and intestate] on the head so that he died on December 18, 1969."

With the maxim of our civil procedure in mind, my reading of this complaint leads me to conclude that its allegations were not limited to intentional, deliberate or criminal acts of other tenants or third persons. The allegations stated facts which would support proof of negligence by others. Plaintiff alleged that through the negligence of others, coupled with the negligence of defendant in failing to make the common area and passageways of its building reasonably safe, her son, Ernest Trice, was injured and died as a result of his injuries. This being so, I do not agree with the majority that the principal issue in this appeal is whether a landlord has the duty to protect his tenants from intentional or deliberate acts of other tenants or third persons. (See Annot., 43 A.L.R.3d 331.) This formulation of the issue, in my judgment, reflects the error that led to dismissal of plaintiff's complaint on the ground that it did not state a cause of action. If it were shown, by a trial or some other procedure, that plaintiff's case rests only on the claim that defendant did not protect her and her son from intentional, deliberate or criminal acts of tenants or others, we will then have before us the issue which the majority decides. In this appeal, the issue is whether the complaint states a cause of action. In my judgment it did. (See *Runions v. Liberty Nat. Bank,* 15 Ill.App.2d 538, 147 N.E.2d 380; compare *Gille v. Winnebago County Housing Authority,* 44 Ill.2d 419, 255 N.E.2d 904.) Therefore,

the trial court erred in sustaining defendant's motion to dismiss. For these reasons, I respectfully dissent from the majority and concurring opinions of my brethren.