UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, AtLee and Malveaux
Argued at Richmond, Virginia


NORRIS GOODE, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 1497-23-2                        JUDGE RICHARD Y. ATLEE, JR.
                                                      JULY 30, 2024

HUGUENOT SPRINGS, LLC, ET AL.


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Joseph M. Teefey, Jr., Judge

Malik N. Drake (Law Office of Malik N. Drake, PLLC, on brief), for
appellant.

Julie S. Palmer (Stanley P. Wellman; Harman, Claytor, Corrigan &
Wellman, on brief), for appellees Huguenot Springs, LLC and Reza
Omarzai.

No brief or argument for appellees Jacob Moore and Jesse Ray
Moore.


In this appeal, we consider whether the trial court erred by sustaining a demurrer to a

negligence claim because the defendants, Huguenot Springs, LLC, and Reza Omarzai, had

neither a duty to protect the plaintiff, Norris Goode, Jr., from a criminal assault, nor a duty to

control the criminal actors' behavior.  Goode argues that Huguenot Springs and Omarzai had

duties under the facts as alleged in his amended complaint, and alternatively, that they

voluntarily assumed a duty to warn or protect him.  For the following reasons, we affirm the trial

court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

I. BACKGROUND

"Because this case was decided below on demurrer, we accept as true the well-pleaded facts set forth in the amended complaint and all inferences fairly drawn therefrom." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 133 (2018). "We are not bound, however, by the 'conclusory allegations' set forth in the amended complaint." *Id.* (quoting *Brown v. Jacobs*, 289 Va. 209, 212 n.2 (2015)).

In 2016, Jacob and Jesse Moore were renting property in Powhatan County from Huguenot Springs. Omarzai was "a member, manager, and/or officer of Huguenot Springs." Goode contacted Omarzai and received his permission to fish in a pond on the property that the Moores were renting. Omarzai did not notify the Moores that he had given Goode permission to fish.[1]

Goode entered the property to fish the next day. The Moores noticed Goode "and began yelling at [him] from afar." The men approached, and the Moores asserted that "one of them . . . was responsible for stocking the pond with fish, and therefore the fish belonged to them." After a "heated discussion," the Moores "brutally attacked" Goode with a knife, inflicting severe injuries to his head and arm. This attack was "wholly unprovoked and unreasonable." Goode was transported to a hospital, where imaging revealed that "a knife blade . . . had broken off" during the attack and was stuck in his skull. Goode endured extensive medical treatment, resulting in over $600,000 in medical bills and related expenses. Further, he suffered, and continues to suffer, from "pain, physical limitations, and mental anguish as a result of injuries he suffered."

In his amended complaint, Goode alleged that as the "owner of the property," and having knowledge of the Moores' presence on the leased property, Huguenot Springs was "in position to exert great control over the course of events that transpired," but failed to do so. In other words, by

---

[1] Given the posture of this case, we accept as true the complaint's allegation that Huguenot Springs had the authority to grant Goode permission to fish in the pond. *Terry*, 296 Va. at 133. The record does not contain a written lease agreement between Huguenot Springs and the Moores.

granting Goode permission to fish without informing the Moores, as tenants, Omarzai created a "special relationship" between (1) Huguenot Springs and the Moores, and (2) Huguenot Springs and Goode. Given those relationships, Huguenot Springs' control over the property, and Goode's status as an invitee, Goode maintained that Huguenot Springs and Omarzai had a duty to warn and protect him "from the foreseeable danger of a criminal assault" when he entered the property to catch fish that belonged to the Moores. In Goode's view, Huguenot Springs and Omarzai orchestrated a "dangerous environment" that "antagoniz[ed]" the Moores by granting Goode access to the property, which resulted in "an unreasonable risk of harm" to Goode. Accordingly, Goode sought a total of $4,000,000 in compensatory and punitive damages for Huguenot Springs' and Omarzai's negligence.

Huguenot Springs and Omarzai demurred, arguing in relevant part that they did not owe Goode a duty to warn of or protect him from others' criminal actions because there was not a "cognizable 'special relationship'" between them and Goode, or between them and the Moores. They further argued that the complaint failed to allege facts sufficient to demonstrate that they were on notice of "an imminent probability of harm" to Goode.

After a hearing, the trial court found that the amended complaint "failed to allege a recognized special relationship between" Huguenot Springs and Omarzai and either Goode or the Moores. In addition, the court ruled that there was no duty to warn or protect Goode because the criminal assault was not reasonably foreseeable. Finally, the court found that neither Huguenot Springs nor Omarzai had voluntarily assumed a duty to protect Goode from the criminal assault. Accordingly, it sustained the demurrer and dismissed with prejudice Huguenot Springs and Omarzai as defendants.[2]

---

[2] The trial court also dismissed with prejudice Goode's negligent infliction of emotional distress claim against Huguenot Springs and Omarzai. Goode does not challenge that ruling on appeal.

## II. ANALYSIS

We review "a circuit court's decision to sustain a demurrer de novo." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Id.* We further "interpret those allegations in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).

> A. *Huguenot Springs and Omarzai did not have a duty to warn or protect Goode against unforeseeable criminal conduct.*

Goode argues that the trial court erred by sustaining the demurrer, finding no special relationships existed that required Huguenot Springs and Omarzai either (1) to warn and protect Goode against the Moores' criminal actions, or (2) to control the Moores' criminal conduct. Goode contends that by granting him permission to fish, Huguenot Springs and Omarzai both implied that anyone who might be legally present on the property also had notice of, and consented to, Goode's fishing and assured his safety while he did so. He alleges that Huguenot Springs and Omarzai had a duty to warn him that the land was occupied. He also contends that because Huguenot Springs and Omarzai knew that Goode's presence would "anger or antagonize" the Moores by infringing on their "enforceable property rights" in the land or the

---

Goode also sued the Moores for assault and battery and intentional infliction of emotional distress. On November 8, 2021, the trial court entered a partial final judgment order under Rule 1:2(a), dismissing with prejudice Jacob Moore as a defendant. Goode did not appeal that partial final judgment order under Rule 1:2(b), so it is final, and Jacob Moore's unopposed motion to dismiss him as a party in this appeal is granted. Finally, the record demonstrates Goode obtained a default judgment for $2.5 million against Jesse Moore. Jesse Moore does not challenge that judgment in this appeal.

fish in the pond,[3] the subsequent attack was foreseeable. Finally, Goode maintains that imposing a duty on Huguenot Springs and Omarzai under the circumstances of this case would not be overly burdensome, especially given their control over the property and the imbalance of knowledge that existed between them and Goode.

"To plead a cause of action for negligence, a plaintiff must allege a legal duty, a violation of that duty and resulting damage." *Terry*, 296 Va. at 135 (quoting *Brown*, 289 Va. at 215). "As a general rule, there is no duty to warn or protect against acts of criminal assault by third parties." *Id.* "This is so because under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" *Id.* (quoting *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 222 (1998)). Nevertheless, the Supreme Court has recognized some rare exceptions "when a special relation exists (1) between the defendant and the [criminal actor] which imposes a duty upon the defendant to control the [criminal actor's] conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." *Burdette v. Marks*, 244 Va. 309, 312 (1992). To be sure, "the finding of a special relationship is a 'threshold requirement'" for a duty to arise regarding the conduct of third parties. *Terry*, 296 Va. at 136 (quoting *Brown*, 289 Va. at 215). Whether a special relationship gives rise to a duty is a fact-specific inquiry. *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 106 (2001).

The existence of a "special relationship" between a defendant and a criminal actor is "almost always limited to a defendant's exercise of a legal duty to control the actions of a person in custody or on parole." *Id.* at 107 n.3. For example, in *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 272, 279 (1991), the Supreme Court recognized that a privately operated "halfway house" for felons had a special relationship with its clients and owed a duty of

---

[3] For purposes of this memorandum opinion, we assume, as alleged in the complaint, that the Moores believed that they had a personal property right to the fish they stocked in the pond. *See Terry*, 296 Va. at 133.

- 5 -

care to control the clients' actions. The Court observed that "a person 'likely to cause bodily harm to others if not controlled' . . . is a potential threat to all who come within his reach." *Id.* (quoting Restatement (Second) of Torts § 319 (Am. L. Inst. 1965)). Thus, the Court concluded that "'[o]ne who takes charge' of such a dangerous person incurs a . . . duty to . . . those who are directly and *foreseeably* exposed to the risk of bodily harm as a result of the defendant's failure to control his dangerous charge." *Id.* (first alteration in original) (emphasis added) (quoting Restatement (Second) of Torts, *supra*).

Similarly, when a defendant has a "special relationship" with a plaintiff that "provides a right of protection to a plaintiff by a defendant from the criminal acts of third persons," the scope of the duty extends only to those criminal acts "that can be *reasonably foreseen or anticipated*." *Holles v. Sunrise Terrace*, 257 Va. 131, 136 (1999) (emphasis added). "Where the duty does exist [arising from a requisite relationship], the obligation is not an absolute one to insure the plaintiff's safety[;] . . . there is . . . no liability . . . where the defendant neither knows nor has reason to foresee the danger or otherwise to know that precautions are called for." *A.H.*, 255 Va. at 220-21 (alterations in original) (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984)). Under those principles, the Supreme Court has held that a railroad company breached a duty to protect an 18-year-old female passenger by discharging her from the train at night in a dangerous place, where "questionable characters" frequented and the "carrier ha[d] reason to anticipate the danger of an assault." *Hines v. Garrett*, 131 Va. 125, 138, 140 (1921). By contrast, "there generally is no special relationship between a landlord and a tenant that would impose a common law duty on the landlord to protect the tenant from an intentional criminal act of an unknown third person." *Holles*, 257 Va. at 136-37. Similarly, "an owner or occupier of land, 'whose method of business does not attract or provide a climate for assaultive crimes,'" has no "duty to take measures to protect an invitee against

criminal assault unless he knows that criminal assaults . . . are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee.'" *Burns v. Johnson*, 250 Va. 41, 44 (1995) (quoting *Wright v. Webb*, 234 Va. 527, 533 (1987)).

Finally, the imposition and scope of a duty arising from a special relationship "does not depend upon foreseeability alone." *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159 (1974) (quoting *Trice v. Chicago Housing Auth.*, 302 N.E.2d 207, 209 (Ill. App. Ct. 1973)). "[T]he magnitude of the burden of guarding against" foreseeable criminal conduct, "and the consequences of placing that burden on the defendant[,] must [also] be taken into account." *Id.* (quoting *Trice*, 302 N.E.2d at 209). Thus, if "posting of a security force in the area of potential assaults" is "cost . . . prohibitive," and an invitor and invitee "are both innocent victims of assaultive criminals, it is unfair to place [the] burden" of protecting the invitee "on the invitor." *Wright*, 234 Va. at 531.

Goode's amended complaint failed to allege facts that establish the existence of a special relationship that gave rise to a duty for either Huguenot Springs or Omarzai to protect Goode or control the Moores. Nothing in the complaint demonstrates that defendants had anything more than a landlord-tenant relationship with the Moores, which, by itself, is insufficient to give rise to a special relationship. *See Holles*, 257 Va. at 136-37 ("[T]here generally is no special relationship between a landlord and a tenant . . . ."). Although Goode emphasizes the alleged personal property rights the Moores had either in the property or the fish, and suggests that defendants should have known that Goode infringing on those rights would antagonize the Moores, it is not reasonably foreseeable that those circumstances would lead to a violent assault, let alone one that threatened Goode's life. *Cf. Terry*, 296 Va. at 136 ("With regard to the criminal act of murder specifically, we have noted that a defendant 'cannot be deemed to have anticipated nor be expected to guard and protect [a plaintiff] against a crime so horrid, and

- 7 -

happily so rare, as that of murder.'" (quoting *Connell's Ex'rs v. Chesapeake & Ohio R.R.*, 93 Va. 44, 58 (1896))). Indeed, case law firmly establishes that "an owner of personal property[ does] not have the right to assert or defend his possessory rights thereto by the use of deadly force." *Commonwealth v. Alexander*, 260 Va. 238, 241 (2000).

Similarly, nothing in the complaint demonstrates that Huguenot Springs and Omarzai did anything more than grant permission for Goode to enter the property to fish, which, by itself, is insufficient to give rise to a special relationship that imposes an affirmative duty to protect him from others' criminal conduct. *See Wright*, 234 Va. at 533 (holding that a business owner is not liable for criminal assault on invitee). There is no evidence that defendants knew of or encouraged "a climate for assaultive crimes" on the property, or that the Moores would be predisposed to respond to Goode's presence by perpetuating a potentially lethal attack. *Burns*, 250 Va. at 44 (quoting *Wright*, 234 Va. at 533); *see also Gulf Reston*, 215 Va. at 159 (emphasizing that in cases where a duty to protect from criminal conduct existed, the breach of the duty occurred "in areas where frequent robberies and rapes were committed, and such occurrences . . . were known to the" defendants).

B. *Huguenot Springs and Omarzai did not voluntarily assume a duty to protect Goode against the criminal conduct.*

Alternatively, Goode argues that Huguenot Springs and Omarzai "voluntarily" accepted "a duty to protect [him] against an act of criminal assault." He contends that because defendants owned the land and were aware that the Moores lived there, they "strongly implied" that they would protect Goode when they granted him permission to fish in the pond. He insists, without citing to legal authority, that "[i]nherent in giving permission is the assurance that there is no danger in acting on that permission." Indeed, he asserts that granting him permission to fish "was equivalent to an express communication to protect" Goode from the Moores while he fished. And even if there was

- 8 -

no express communication, Goode argues that Huguenot Springs and Omarzai assumed the duty by their conduct.

Even without a "special relationship," the Supreme Court has "recognized that a defendant may owe a duty to protect against an act of criminal assault by a third party where the defendant voluntarily undertook such duty by *expressly communicating* his intention to do so." *Terry*, 296 Va. at 136 (emphasis added). To be sure, "[a]s a general proposition, a duty that does not exist may be impliedly assumed from the defendant's conduct" without any express communication. *Id.* at 138. But the Supreme Court has explicitly declined to hold that an "*implied* undertaking may give rise to an assumed duty to warn or protect against the danger of a criminal act by a third party." *Id.* at 138-39 (emphasis added). Rather, courts will recognize "a voluntarily assumed duty to warn or protect against the danger of criminal assault by a third person" only if the duty is an "express undertaking." *Id.* at 141. Any other rule "would discourage . . . parties from taking extra precautions" to protect others for fear that doing so would incur "liability which they otherwise would not have had." *Id.* at 138 (quoting *A.H.*, 255 Va. at 223).

The above Supreme Court caselaw forecloses Goode's arguments. Huguenot Springs and Omarzai could not assume a duty to protect Goode by their conduct, and Goode's argument to the contrary is legally infirm. Such a duty could arise only after an "express undertaking," *id.* at 141, and defendants made no such express promises in this case. Rather, they merely granted Goode permission to fish on the pond. Moreover, Goode cannot avoid the application of that principle by arguing that defendants' conduct "was equivalent to an express communication to protect [him]." That argument is transparently just another way of asserting that defendants could impliedly assume a duty to protect Goode through their conduct; thus, accepting the argument would undo the rationale that formed the basis for the Supreme Court's opinion in *Terry*. Simply,

defendants did not expressly state that they would protect Goode, and we reject his arguments that they impliedly voluntarily assumed a duty to do so.

### III.  CONCLUSION

In sum, under the facts as alleged in the amended complaint, neither Huguenot Springs nor Omarzai had a duty to protect Goode or control the Moores.  Nor did they voluntarily assume a duty to protect Goode.  Thus, the trial court did not err in sustaining the demurrer and dismissing Goode's negligence claim with prejudice.

*Affirmed.*